Arthur Calick v. Commissioner.
Calick v. Commissioner
Docket No. 6173-70 SC
United States Tax Court
T.C. Memo 1972-23; 1972 Tax Ct. Memo LEXIS 231; 31 T.C.M. (CCH) 69; T.C.M. (RIA) 72023; January 31, 1972, Filed Arthur Calick, pro se, *232 175-20 Wexford Terrace, Jamaica Estates, N. Y. David B. Spivak, for the respondent. INGOLIA
Memorandum Findings of Fact and Opinion INGOLIA, Commissioner: Respondent determined a deficiency in petitioner's Federal income tax for 1968 in the amount of $469.48. The only issue involved is whether the petitioner is entitled to exclude $3,600 as 70 a "scholarship" or "fellowship" grant under section 117. [1]
Findings of Fact Arthur Calick, the petitioner, was a legal resident of JamaicaEstates, New York, at the time his petition was filed. He filed his Federal income tax return for 1968 at New York, New York. Petitioner was graduated from the New York Medical College in June of 1965, and later served as an intern in the Kings County Downstate Medical School. For the year beginning July 1, 1966, and ending June 30, 1967, the petitioner was a firstyear resident in internal medicine with the Metropolitan Hospital Center (hereinafter referred to as Metropolitan). He entered into a "House Staff Agreement" with the hospital in which he *233 agreed to remain for a year, not to engage in any outside practice, and to accept any assignment of duty made by the hospital administrator. Under the agreement, it was understood that the petitioner would receive uniforms, board, laundry service, and any honorarium provided for in the hospital budget. It was also understood that he could choose to live in quarters provided by the hospital or could live out. The petitioner received $5,640 from Metropolitan for his first year of residency. For the year beginning July 1, 1967, and ending June 30, 1968, petitioner was a second-year resident in internal medicine with Metropolitan. He entered into a second agreement similar to the first and received $6,510 from Metropolitan. For the year beginning July 1, 1968, and ending June 30, 1969, the petitioner was a third-year Chief resident in internal medicine at the Flower and Fifth Avenue Hospital (hereinafter referred to as Flower). He entered into a "Memorandum of Agreement" with Flower in which he agreed to perform designated services, not to engage in outside practice, and to conform to the various rules of the hospital. In return, petitioner received $5,780 plus $220 as Chief, as well *234 as an allowance of $77.50 per month in lieu of housing facilities. In December of 1968, an Employee Change Notice (Form PD-4) was effected by Flower on which a "Salary Change" was made increasing the petitioner's salary from $6,930 to $11,000 peryear, retroactively from July 1, 1968. In 1968, the amounts paid to the petitioner by Metropolitan and Flower were paid as salary and the petitioner was issued a Wage and Tax Statement (Form W-2) indicating the amounts of F.I.C.A. employee tax being withheld as well as the withholding for other Federal, State, and City taxes. Also, in 1968 and in prior years, the petitioner was covered by Blue Cross and Blue Shield health insurance which was paid for by the hospital. He also accrued sick leave and vacation leave on a monthly basis, and was entitled to a discount on drug purchases. In 1968, the petitioner was covered by group life insurance, the premiums for which were paid by the hospital, he was provided with meals at no charge, and he received free laundry services. In 1968, both Metropolitan and Flower were general admission hospitals organized primarily for the care and treatment of patients. Metropolitan and Flower had approximate *235 bed capacities of 1,000 and 400 beds, respectively. Their "medical bed" capacity (beds assigned to the Department of Internal Medicine) was 200 and 100, respectively. During 1968, Metropolitan had 180 staff physicians, 13 of whom were full time and conducted day-to-day activities there. Flower had 2 staff physicians who were full time. In 1968, Metropolitan and Flower had approximately 60 residents in their Departments of Medicine. Without residents Metropolitan and Flower would have had to employ many more physicians to take care of their patients. As to his specific duties, the petitioner examined patients and issued diagnostic reports. He prepared patient histories and prescribed various treatment for them. At any one time, he would have from 5 to 20 patients under his care. He would see them every day. They were assigned to him on a rotation basis, not because of teaching considerations. As a resident, he helped supervise interns and as Chief resident he supervised other residents. Ptitioner normally came to work at 8:00 a.m. and left at 4:30 p.m. However, he was on call on a rotating basis and at times was required to work weekend shifts and at night. As a resident, the petitioner *236 was being trained in internal medicine, but where a conflict arose between the formalized training and the operation of the hospital, such as attending to ward duties, the operation 71 of the hospital always took precedence. In order for the petitioner to be certified by the American Board of Internal Medicine, it was necessary that he complete his residency. While a resident, the petitioner was a member of an organization known as the Committee to Interns and Residents. One of its activities was to negotiate with the Health and Hospital Corporation to secure salary increases for its members. Opinion Section 117 [2] deals with scholarships and fellowship grants and generally excludes from gross income any amount received as a scholarship at an educational institution as defined in the law or as a fellowship grant. The law itself does not define "scholarships" or "fellowships" even though this Court has held that before a payment can be excluded under the statute it must be shown to have the "normal characteristics" associated with these terms. Elmer L. Reese, Jr., 45 T.C. 407, 413 (1966), affd. per curiam 373 F. 2d 742 (C.A. 4, 1967). However, the *237 regulations [3] supply the definitions that Congress omitted. They also provide that amounts paid as compensation for services or primarily for the benefit of the grantor will not be excludable from gross income. *238 In Bingler v. Johnson, 394 U.S. 741 (1969), the Supreme Court upheld the validity of the Regulations. 72 The question now before us is whether payments were made to the petitioner as compensation or for the benefit of his employers, or were made primarily to allow him to further his education and training. Petitioner argues that he entered the residency training program because of his educational needs. In support, he notes, among other things, that he could have earned more in outside practice; that he could be certified by the American Board of Internal Medicine only after completing his residency; that staff members of New York Medical College operated the training program; and that he was not ultimately responsible for the patients. Respondent, on the other hand, argues that the payments received by the petitioner from Metropolitan and Flower represented compensation includable in his income under section 61(a). [4] He predicates his arguments on the nature and wide range of activities carried on by the petitioner, the fact that Metropolitan and Flower were general admission hospitals, that they treated the funds paid to the petitioner as wages, that they provided *239 him with "fringe benefits" usually associated with compensation, and that it would have been necessary to hire additional staff physicians to service patients if residents were not used. In Aloysius J. Proskey, 51 T.C. 918 (1969), the petitioner, as here, was a resident in internal medicine. He performed many services, including the examination of patients, the writing of progress reports, and the recording of patient histories. As here, the amount he received was not dependent on financial need, but increased as his duties and responsibilities increased. He received many fringe benefits normally associated with an employment relationship and the hospital treated the payments made to him as wages. As in the instant case, the petitioner in Proskey maintained that his principal objective in accepting an appointment as a resident physician at great financial sacrifice *240 was to obtain training in his profession. In deciding the issue before it in Proskey, supra, the Court stated: There can be no serious doubt that work as a resident physician provides highly valuable training, particularly in preparing for specialties in the various fields of medicine. Yet virtually all work as an apprentice, whether in medicine or law, carpentry or masonry, provides valuable training. Nothing in section 117 requires that an amount paid as compensation for services rendered be treated as a nontaxable fellowship grant, merely because the recipient is learning a trade, business, or profession. Whatever training petitioner 73 received during the years of his residency - and we do not deny that it was substantial - was merely "incidental to and for the purpose of facilitating the raison d'etre of the Hospital, namely, the care of its patients." Ethel M. Bonn, 34 T.C. 64, 73 (1960); Woddail v. Commissioner, supra. We conclude that petitioner was an employee of University Hospital and was paid the stipend as compensation for the services which he rendered, See Stewart v. United States, 363 F. 2d 355 (C.A. 6, 1966). We think *241 the view expressed by this court in Proskey is equally applicable in the instant case and consequently we must hold for the respondent. We reached a similar result in Irwin S. Anderson, 54 T.C. 1547(1970); and with few exceptions courts have consistently held such payments to "be compensation for past, present or future employment services" or "payment for services which are subject to the direction or supervision of the grantor." See Frederick Fisher, 56 T.C. 1201, 1211 (1971), and the cases cited therein. As to the petitioner's reliance on Pappas v. United States, an unreported case ( E. D. Ark. 1967, 19 A.F.T.R. 2d 1276, 67-1 USTC 9386), there a jury found that payments made by the University of Arkansas Medical Center were made primarily for the purpose of furthering the taxpayer's education and training. We have made no such finding here. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the year in issue, unless otherwise noted.↩
2. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule. - In the case of an individual, gross income does not include - (1) any amount received - (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or (B) as a fellowship grant, including the value of contributed services and accommodations; (2) any amount received to cover expenses for - (A) travel, (B) research, (C) clerical help, or (D) equipment, which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient. (b) Limitations. - (1) Individuals who are candidates for degrees. - In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph. (2) Individuals who are not candidates for degrees. - In the case of an individual who is not a candidate for a degree at an educational institution (as defined in section 151(e)(4), subsection (a) shall apply only if the condition in subparagraph (A) is satisfied and then only within the limitations provided in subparagraph (B). (A) Conditions for exclusion. - The grantor of the scholarship or fellowship grant is - (i) an organization described in section 501 (c)(3) which is exempt from tax under section 501(a), (ii) a foreign government, (iii) an international organization, or a binational or multinational educational and cultural foundation or commission created or continued pursuant to the Mutual Educational and Cultural Exchange Act of 1961, or (iv) the United States, or an instrumentality or agency thereof. or a State, a territory, or a possession of the United States, or any political subdivision thereof, or the District of Columbia. (B) Extent of exclusion. - The amount of the scholarship or fellowship grant excluded under subsection (a)(1) in any taxable year shall be limited to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or fellowship grant during such taxable year, except that no exclusion shall be allowed under subsection (a) after the recipient has been entitled to exclude under this section for a period of 36 months (whether or not consecutive) amounts received as a scholarship or fellowship grant while not a candidate for a degree at an educational institution (as defined in section 151(e) (4)). ↩
3. Sec. 1.117-3. Definitions. (a) Scholarship. - A scholarship generally means an amount paid or allowed to, or for the benefit of, a student, whether an undergraduate or a graduate, to aid such individual in pursuing his studies. The term includes the value of contributed services and accommodations (see paragraph (d) of this section) and the amount of tuition, matriculation, and other fees which are furnished or remitted to a student to aid him in pursuing his studies. The term also includes any amount received in the nature of a family allowance as a part of a scholarship. However, the term does not include any amount provided by an individual to aid a relative, friend, or other individual in pursuing his studies where the grantor is motivated by family or philanthropic considerations. If an educational institution maintains or participates in a plan whereby the tuition of a child of a faculty member of such institution is remitted by any other participating educational institution attended by such child, the amount of the tuition so remitted shall be considered to be an amount received as a scholarship. * * * (c) Fellowship grant. - A fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research. The term includes the value of contributed services and accommodations (see paragraph (d) of this section) and the amount of tuition, matriculation, and other fees which are furnished or remitted to an individual to aid him in the pursuit of study or research. The term also includes any amount received in the nature of a family allowance as a part of a fellowship grant. However, the term does not include any amount provided by an individual to aid a relative, friend, or other individual in the pursuit of study or research where the grantor is motivated by family or philanthropic considerations. * * * (e) Candidate for a degree. - The term "candidate for a degree" means an individual, whether an undergraduate or a graduate, who is pursuing studies or conducting research to meet the requirements for an academic or professional degree conferred by colleges or universities. It is not essential that such study or research be pursued or conducted at an educational institution which confers such degrees if the purpose thereof is to meet the requirements for a degree of a college or university which does confer such degrees. A student who receives a scholarship for study at a secondary school or other educational institution is considered to be a "candidate for a degree". Sec. 1.117-4. Items not considered as scholarships or fellowship grants. The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117: * * * (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. - (1) Except as provided in paragraph (a) of § 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant.↩
4. SEC. 61. GROSS INCOME DEFINED. (a) General Definition. - Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, commissions, and similar items * * *↩