ELMER L. REESE, JR., AND DOROTHY L. REESE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2635–64. Filed January 28, 1966.

Elmer L. Reese, Jr., pro se.
*Charles F. T. Carroll*, for the respondent.

TANNENWALD, *Judge:* Respondent determined a deficiency in petitioners' 1960 Federal income tax of $423.52 by including in their gross income $1,900 received by petitioner Dorothy L. Reese from the Board of Education of Baltimore County, Maryland. The sole issue is whether such amount is excludable from gross income under section 117 of the Internal Revenue Code of 1954.

FINDINGS OF FACT

Some facts have been stipulated and are incorporated herein by reference and found accordingly.

Petitioners are residents of Baltimore, Md., and filed their 1960 joint Federal income tax return with the district director of internal revenue, Baltimore, Md. Any reference to petitioner shall be in reference to Dorothy L. Reese, her husband Elmer L. Reese, Jr., being a party to this proceeding only by reason of having filed a joint return with her.

During the year in issue, Johns Hopkins University, Baltimore, Md., participated in the Master of Arts in Teaching program subsidized by the Fund for the Advancement of Education of the Ford Foundation. The subsidy was used to provide remission of tuition for the program in varying degrees—the range for any particular student being from one-third to two-thirds, with the average being one-half.

Under the Master of Arts in Teaching program (hereinafter referred to as the M.A.T. program) at Johns Hopkins, students were required to engage in "internship teaching." They met the requirement through a course entitled "Observation and Student Teaching in Secondary Schools." Such teaching differed from teaching ordinarily required for a bachelor's degree in education in that the student took full responsibility for a classroom. Johns Hopkins arranged teaching positions for its M.A.T. students in secondary schools. Supervision by the Johns Hopkins staff varied with the student's ability and the situation in which he or she was teaching. Supervision by the staff of the secondary school was the same given to other first-year teachers.

In conjunction with internship teaching, the student was required to participate in conferences on teaching problems. Attending such conferences were the students, the Johns Hopkins staff, and members of the faculties of the schools in which the students were teaching.

An applicant for the M.A.T. program was told that he or she would receive from Johns Hopkins partial tuition remission made possible by the Ford Foundation grant and payment from the secondary school for teaching. It was contemplated by Johns Hopkins that the amounts received for teaching would be used to meet the remainder of the tuition and other expenses. However, the student was not required to use such amounts for any specific purpose.

From February 9, 1960, to February 8, 1961, petitioner participated in the M.A.T. program as a candidate for the degree of master of arts in teaching at Johns Hopkins. During such period, petitioner took academic courses at Johns Hopkins. She received her degree on February 8, 1961.

Petitioner received a tuition remission of $1,200 through the Ford Foundation grant.

To meet the requirement of "internship teaching" under the M.A.T. program, petitioner taught 20 hours per week in a public school in Baltimore County, Md., during the period February 1 to June 30, 1960.[1] She replaced a regular teacher and was paid $1,900 by the Board of Education of Baltimore County from the board's own funds and not from the Ford Foundation grant. Such amount was in accordance with the salary scale for a teacher holding a bachelor's degree but not certified for teaching by the State. Income taxes were withheld from such payments.

Petitioner excluded the $1,900 from her gross income in 1960. Respondent determined that such amount was not excludable.

OPINION

The only issue is whether the amount of $1,900 received by petitioner from the Board of Education of Baltimore County, Md., in 1960 is excludable from her gross income under section 117 of the 1954

---

[1] Petitioner taught pursuant to a letter of appointment from the board, but she did not sign a written contract. The letter referred to her acceptance in the M.A.T. program and expressed pleasure "that you will be serving your internship in the Baltimore County school system."

While the letter stated that petitioner was a "long term substitute" teacher, a board official referred to her in his testimony as a "student teacher." We do not believe that there is necessarily any inconsistency between these two descriptions.

Code.[2] The excludability of the $1,200 tuition remission is not in issue.

Petitioner offers alternative grounds on which to overturn respondent's determination. She contends that, since both tuition remission through the Ford Foundation grant and conferral of the degree were conditioned on her performance of teaching services, the amount of $1,900 received therefor is excludable pursuant to section 117 (a) and (b) (1). Her alternative theory is that the teaching was primarily for the advancement of her skills as a teacher and not primarily for the benefit of the board of education, with the result that payment therefor is similarly excludable pursuant to section 1.117–4(c), Income Tax Regs.

We will deal with petitioner's alternative theory first. The primary purpose test requires a determination of the *raison d'être* of the pay-

---

[2] I.R.C. 1954:
SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS.
    (a) GENERAL RULE.—In the case of an individual, gross income does not include—
        (1) any amount received—
            (A) as a scholarship * * *

      *          *          *          *          *          *          *
    (b) LIMITATIONS.—
        (1) INDIVIDUALS WHO ARE CANDIDATES FOR DEGREES.—In the case of an individual who is a candidate for a degree * * * subsection (a) shall not apply to that portion of any amount received which represents payment for teaching * * * services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching * * * services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching * * * services shall not be regarded as part-time employment within the meaning of this paragraph.
Income Tax Regs. :
Sec. 1.117   Statutory provisions ; scholarships and fellowship grants.

      *          *          *          *          *          *          *
Sec. 1.117–2  Limitations.
    (a) *Individuals who are candidates for degrees*—(1) *In general.* Under the limitations provided by section 117(b)(1) in the case of an individual who is a candidate for a degree at an educational institution, the exclusion from gross income shall not apply (except as otherwise provided in subparagraph (2) of this paragraph) to that portion of any amount received as payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or fellowship grant. * * *
    (2), *Exception.* If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving the degree, such teaching, research, or other services on the part of the recipient of a scholarship or fellowship grant who is a candidate for such degree shall not be regarded as part-time employment within the meaning of this paragraph. Thus, if all candidates for a particular educational degree are required, as part of their regular course of study or curriculum, to perform part-time practice teaching services, such services are not to be regarded as part-time employment within the meaning of this paragraph.

      *          *          *          *          *          *          *
Sec. 1.117–4  Items not considered as scholarships or fellowship grants.

      *          *          *          *          *          *          *
    (c) *Amounts paid as compensation for services or primarily for the benefit of the grantor.* (1) Except as provided in paragraph (a) of § 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.
    (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor.

ment—was it to further the education and training of the recipient or was it, in reality, payment for services which directly benefited another person? Obviously, such a determination depends upon whose purpose is adopted as the standard of measurement. Often more than a single purpose is involved. In the instant case, Johns Hopkins undoubtedly wanted to enlarge the training and education of petitioner. Although petitioner did not testify, it appears that she had a similar purpose but, at the same time, viewed her services as a means of obtaining funds with which to finance her education. The Board of Education of Baltimore County was obviously interested in assisting the M.A.T. program, but we doubt that such interest was ever more than secondary to its interest in obtaining a teacher—albeit a substitute teacher—to take full responsibility for a classroom.

The decided cases hold that the primary purpose of the payment must be to further the education and training of the recipient rather than to compensate the recipient for services rendered or to be rendered which directly benefit the payor. *Woddail* v. *Commissioner*, 321 F. 2d 721 (C.A. 10, 1963), affirming a Memorandum Opinion of this Court; *Ussery* v. *United States*, 296 F. 2d 582 (C.A. 5, 1961); *Howard Littman*, 42 T.C. 503 (1964); *Alex L. Sweet*, 40 T.C. 403 (1963); *William Wells*, 40 T.C. 40 (1963); *Chander P. Bhalla*, 35 T.C. 13 (1960); *Ethel M. Bonn*, 34 T.C. 64 (1960); *Aileene Evans*, 34 T.C. 720 (1960); *Frank Thomas Bachmura*, 32 T.C. 1117 (1959); *Wrobleski* v. *Bingler*, 161 F. Supp. 901 (W.D. Pa. 1958); *Anderson* v. *United States*, an unreported case (D. Minn. 1960, 7 A.F.T.R. 2d 726, 61-1 U.S.T.C. par. 9162); cf. *Charles P. Ide*, 40 T.C. 721 (1963), affd. 335 F. 2d 852 (C.A. 3, 1964) [3]

Petitioner herein in fact replaced a full-time teacher in the school in which she taught. She received only intermittent supervision by the Johns Hopkins staff, and she received no more supervision from the school staff than any other beginning teacher. She had full responsibility for a classroom, and she was paid in accordance with the salary scale for all teachers. Under these circumstances, we conclude that petitioner has failed to justify the exclusion on the basis of the primary purpose test. Compare *William Wells*, *supra*, and *Chander P. Bhalla*, *supra*, with *Howard Littman*, *supra*.

Petitioner strenuously urges, however, that even if application of the primary purpose test would not result in exclusion of the payments, she should nevertheless prevail. She argues that we need not concern ourselves with the nuances of the primary purpose test where, as is the case herein, she was the holder of a scholarship (in the form of tuition remission) and the part-time services which she performed and for which she was paid were required of all candidates for the

---

[3] The rationale of the primary purpose test has been questioned. See 1 Mertens, Law of Federal Income Taxation, sec. 7.42, pp. 106–118.

master of arts in teaching degree. She insists that, in enacting section 117(b)(1), Congress effectively established a mechanical test in accordance with which the amounts which she received for such part-time services should be automatically excluded without regard to the primary purpose test. Respondent, on the other hand, claims that the primary purpose test is as much a part and parcel of section 117(b)(1) as of any of the other subsections of section 117. This question was expressly left open by this Court in *William Wells, supra* at 47.

We hold for respondent.

Section 117 was enacted in 1954 to end the confusion surrounding the tax status of scholarships and fellowships which stemmed primarily from respondent's insistence that "the amount of a grant or fellowship award is includible in gross income unless it can be established that such amount is a gift." I.T. 4056, 1951–2 C.B. 8, 10; see e.g., *Ephraim Banks*, 17 T.C. 1386 (1952).

The report of the House Committee on Ways and Means accompanying H.R. 8300, 83d Cong., 2d Sess. (1954) (which ultimately became the Revenue Act of 1954), sets forth this overall objective as follows:

> Your committee's bill sets forth rules for determining the extent to which scholarships and fellowship grants are to be included in gross income and *eliminates the existing confusion as to whether such payments are to be treated as income or as gifts.* The present statute and regulations do not cover these grants. *The basic ruling of the Internal Revenue Service* which states that the amount of a grant or fellowship is includible in gross income unless it can be established to be a gift *provides no clear-cut method of distinguishing between taxable and nontaxable grants.* Hence, the tax status of these grants *presently must be decided on a case-by-case method.* [H. Rept. No. 1337, 83d Cong., 2d Sess., p. 16 (1954); emphasis added.]

The report of the Senate Finance Committee echoes this rationale. S. Rept. No. 1622, 83d Cong., 2d Sess., p. 17 (1954).

In light of the decisions incorporating the gloss of primary purpose into section 117, it is questionable whether Congress wholly succeeded in providing greater certainty in this area. See 1 Mertens, fn. 3, *supra.* Nevertheless, the overall objective of Congress points the way to our decision herein. We recognize that the interpretation of a statute must be reasonably attributable to its words and that "legislative words are not inert, and derive vitality from the obvious purposes at which they are aimed." *Griffiths* v. *Commissioner*, 308 U.S. 355, 358 (1939); *Helvering* v. *City Bank Co.*, 296 U.S. 85 (1935); Eisenstein, "A Case of Deferred Compensation," 4 Tax L. Rev. 391, 398 (1949).

Section 117(a) states, as a general rule, that "gross income does not include—(1) any amount received—(A) as a scholarship." How-

ever, subsection (b) (1) provides a limitation to the applicability of subsection (a) and then an exception to that limitation:

(b) LIMITATIONS.

(1) * * * In the case of * * * a candidate for a degree * * * subsection (a) shall not apply to that portion of any amount received which represents payment for teaching * * * services in the nature of part-time employment required as a condition to receiving the scholarship * * *. If teaching * * * services are required of all candidates (whether or not recipients of scholarships * * *) for a particular degree as a condition to receiving such degree, such teaching * * * services shall not be regarded as part-time employment * * *

We think that a proper reading of the statute requires that before the exclusion comes into play there must be a determination that the payment sought to be excluded has the normal characteristics associated with the term "scholarship." Only if the "amount received" is a "scholarship" does the limitation and the exception thereto become operative.

The legislative history of section 117 supports this conclusion.

The House bill first provided a general exclusion in subsection (a) of section 117 for scholarships and fellowship grants. It then specified that the exclusion "shall not apply to *that portion of any amount received* which represents payment for teaching or research services in the nature of part-time employment required *as a condition to receiving the scholarship or the fellowship grant*." (Emphasis added.) H.R. 8300, *supra*, sec. 117(b) (1). No distinction was drawn between degree and nondegree candidates.

The House Ways and Means Committee stated with respect to section 117 generally:

This section provides rules for determining the extent to which *amounts received as scholarships or fellowship grants* shall be included in gross income. [H. Rept. No. 1337, *supra* at A-37; emphasis added.]

With respect to the limitation, the report stated:

*When the scholarships and fellowships are granted* subject to the performance of teaching or research services, *the exclusion is not to apply to that portion which represents payments which are in effect a wage or salary.* The amount included will be determined by reference to the going rates of pay for similar services. *This allocation of the amount of the grant* between taxable and non-taxable portions represents more liberal treatment than is allowed under present practice. Present law taxes the grant in its entirety unless services required of the recipient are nominal. [H. Rept. No. 1337, *supra* at 17; emphasis added.]

This language standing alone supports respondent's contention that the primary purpose test was generally superimposed on section 117. The crucial question is whether the Senate amendments substituted a mechanical test for the primary purpose test under circumstances such as are involved herein.

The Senate Finance Committee added the following sentence to section 117 (b) (1) :

> If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.

After noting that the House bill "provides rules for determining the extent to which amounts received as scholarships and as fellowship grants are includible in gross income" and that the committee "has made several amendments," the committee report explained its action as follows:

> Subsection (b) prescribes rules *limiting the amount which may be excluded under subsection (a)*. Paragraph (1) of this subsection as passed by the House provided that the exclusion does not apply to any amount which represents payment for teaching or research services in the nature of part-time employment *required as a condition to receiving the scholarship or fellowship grant.* This paragraph has been amended by your committee so as to be applicable only to individuals who are candidates for degrees at an educational institution (as defined in sec. 151(e)(4)). * * * *A new sentence has also been added at the end of paragraph (1).* It provides that if teaching, research, or other services are required of all candidates (*whether or not recipients of scholarships or fellowship grants*) for a particular degree as a condition to receiving such degree, such teaching, research, or other services *shall not be regarded as part-time employment* within the meaning of this paragraph. The purpose of this provision is to make clear that services which constitute a part of the regular curriculum, or of the regular course of study leading to a particular degree, are not within paragraph (1). For example, if all candidates for a particular education degree are required, as a part of their regular course of study, to perform part-time practice teaching services, such services *are not regarded as part-time employment* for purposes of section 117(b)(1). [S. Rept. No. 1622, *supra* at 188–189 ; emphasis added.]

The provision as recommended by the committee was adopted by the Senate, and the House receded to the change. Conf. Rept. No. 2543, 83d Cong., 2d Sess., p. 26 (1954). The Conference Committee explained the Senate amendment by stating:

> The Senate amendment provides that in the case of individuals who are candidates for degrees, the exclusion provisions of section 117(a) shall not apply to any amount which represents payment for teaching, research, or other services in the nature of part-time employment *required as a condition to receiving the scholarship or the fellowship grant,* other than services required of all degree candidates (*whether or not recipients of scholarships or fellowship grants*). * * * [Conf. Rept No. 2543, *supra;* emphasis added.]

Since petitioner asserts that she was (a) a candidate for a degree who (b) was receiving a scholarship and (c) was paid for teaching

services in the nature of part-time employment[4] which (d) were required of all degree candidates and (e) were required as a condition to receiving the scholarship, she claims that she met the mechanical test for exclusion allegedly laid down by the Senate amendment. The fallacy of that argument lies in her apparent assumption that the amount she received from the Baltimore County Board of Education was so closely related to the scholarship as to bring section 117(a) into play. In making this assumption, she equates a situation where *all* degree candidates are *fully compensated* for their services with a situation where *some* candidates are either *uncompensated or only partially compensated* for such services.

We are aware of the fact that we cannot claim infallibility in mapping the "heavenly city of legislative intention." See Eisenstein, "The Clifford Regulations and the Heavenly City of Legislative Intention," 2 Tax L. Rev. 327 (1947). Nevertheless, the legislative history shows that the House intended that there first be a scholarship or fellowship grant and then decreed that if part-time services were involved, *the portion of the grant* allocable thereto was nevertheless to be *includable in gross income.* All that the Senate did by adding the "new sentence" was to deal with the situation *where a dual condition existed*—i.e., the part-time services were required to obtain the degree and were *also* a prerequisite to receiving the scholarship. In such a case, the Senate amendment decreed that part-time services were not to be considered as being a condition of the scholarship so as to fall within the limitation imposed by the first sentence of section 117(b)(1); consequently, there was to be no allocation under such circumstances.

The Senate amendment sought to deal with a situation *where the dual condition exists.* In such a case an acute problem arises when nonscholarship students are not compensated for the services to the same extent as scholarship students. Under such circumstances, it may be difficult to determine (a) whether the scholarship is, in whole or in part, intended to compensate the grantee and (b) the amount of such compensation. However, where all students, including those not holding such scholarships, are required to render the services to obtain the degree and are compensated therefor, the problem of allocation is easily met. The portion of the amount paid to the scholarship student equal to the amount paid to the nonscholarship student for the services would be considered compensation to each student and to that extent there is no "scholarship."

---

[4] Petitioner taught 20 hours per week for one of the three terms. Since respondent does not raise the question of whether this constitutes part or full-time employment, we need not decide the question.

However, we are not faced with any problem of allocation in this case, since the payments received by petitioner from the Baltimore County Board of Education did not to any degree involve a "scholarship." Petitioner was paid like any other teacher in a comparable position. What she received was nothing more than compensation for services rendered.[5]

Admittedly, the wording of the statute does not leave the question entirely free from doubt. Yet, adoption of petitioner's position would allow those holding scholarships to exclude from their gross income compensation which others not holding scholarships would be required to include.[6] We cannot ascribe to Congress an intention to "legislate eccentrically" in the absence of clear indication that it wanted to discriminate on the basis of such a fortuitous circumstance.[7] *J. C. Penney Co.* v. *Commissioner*, 312 F. 2d 65, 68 (C.A. 2, 1962), affirming 37 T.C. 1013 (1962). We hold that the primary purpose test must be met even though the services are required of all degree candidates.

*Decision will be entered for the respondent.*

---

[5] Respondent points to the withholding of Federal income taxes by the board as indicating the payments were taxable compensation. We have previously held that such action is not significant. *Chander P. Bhalla*, 35 T.C. 13, 17 (1960).

[6] We note that respondent has thrice announced his intention to revise his regulations under sec. 117. See Rev. Rul. 65–146, 1965–1 C.B. 66; Rev. Rul. 65–59, 1965–1 C.B. 67; Rev. Rul. 63–250, 1963–2 C.B. 79. Two of the announcements were made in the light of decisions involving services required of all degree candidates, where the court sustained the exclusion against respondent's contention that the payments in question constituted compensation for services. *Chander J. Bhalla, supra; William Wells*, 40 T.C. 40 (1963); *Anderson* v. *United States*, an unreported case (D. Minn. 1960, 7 A.F.T.R. 2d 726, 61–1 U.S.T.C. par. 9162); *Lawrence Spruch*, T.C. Memo. 1961–63. But these decisions were predicated on a finding that the primary purpose test had been met—that the services involved were intended chiefly to further the education and training of the taxpayer. In view of this narrow ground, we cannot infer that respondent contemplates doing more than refining the elements of the primary purpose test. Cf. Rev. Rul. 64–54, 1964–1 C.B. 81.

[7] Indeed, one may speculate why Congress provided different treatment for degree candidates and nondegree candidates. See Gordon, "Scholarship and Fellowship Grants as Income: A Search for Treasury Policy," 1960 Wash. U.L.Q. 144.