Robert H. Kyle v. Commissioner.
Kyle v. Commissioner
Docket No. 2867-70 SC.
United States Tax Court
T.C. Memo 1972-83; 1972 Tax Ct. Memo LEXIS 174; 31 T.C.M. (CCH) 327; T.C.M. (RIA) 72083; April 6, 1972, Filed. Robert H. Kyle, pro se, 2400 Riviera Drive, Vienna, Va.Richard H. Gannon, for the respondent. INGOLIA
Memorandum Findings of Fact and Opinion INGOLIA, Commissioner: The respondent determined a deficiency in the petitioner's Federal income tax for the calendar year 1967 in the amount of $250. The issue before the Court is whether $1,250 received by the petitioner from his employer in 1967 is excludable from gross income as a scholarship or fellowship grant under section 117. [1]
Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioner, Robert H. Kyle, resided at 2400 Riviera Drive, Vienna, Virginia, *175 at the time his petition was filed. He filed his amended 1967 Federal income tax return with the District Director of Internal Revenue at Buffalo, New York. 328 The petitioner is an electrical engineer. He received his Bachelor's and Master's Degree in Electrical Engineering from Purdue University and in 1965 he began working for the General Electric Company in Syracuse, New York, as an engineer. He worked in a laboratory doing research and development in the area of antennae and microwaves, which is in the general field of electromagnetics. While working for General Electric, he attended Syracuse University at night towards an advanced degree. By 1967, it was necessary that he attend the University full time in order to satisfy all the requirements. In 1967, the petitioner requested that General Electric grant him a leave of absence from September 27, 1967, to May 27, 1968, so that he could satisfy residency requirements for his Ph.D. in Engineering. On July 5, 1967, he was informed by a letter from C. B. Quinn, Administrator, that his request for leave had been granted and that the approval included a "living allowance" of $2,500. The approval was granted under a Company *176 Bulletin pertaining to "Leave of Absence" containing the following provisions: I. PURPOSE A leave of absence provides a manager with a means of protecting continuous service, maintaining a closer relationship with the employee, and encouraging the return to the Company of an employee who is to be absent temporarily for human or business reasons. The reasons should be of a nature that the manager considers they warrant special action and that they are consistent with the requirements of business. The granting of a leave of absence to an employee is not a "right" but is subject to the discretion and sound judgment of the manager. II. GENERAL A leave of absence for a justifiable reason may be granted by the Manager-Electronics Laboratory to an employee to protect his continuity of service during a temporary absence. The leave of absence must be granted in advance and will occur without pay. The granting of such leave does not necessarily constitute a guarantee of re-employment, since reemployment must always be subject to business conditions at the time of return. III. REASONS FOR LEAVE OF ABSENCE Some reasons for leave of absence which may prove justifiable are as follows: *177 A. Illness of spouse, children, parent, or other member of the family. B. Legal action involving an employee. C. Settling an estate requiring an extended trip and/or time. D. Transfer to another Company location when two weeks would not be sufficient time for the employee to make necessary contacts and arrangements. E. Educational reasons (see paragraph VIII). There may arise other reasons which may be justifiable and which may be granted after reviewing the individual circumstances, provided proper approvals are obtained as outlined in paragraph IV. * * * V. FACTORS CONSIDERED IN GRANTING LEAVE OF ABSENCE Some of the factors which may be considered with respect to an employee's request for a leave are listed below: A. Value of individual on assigned work. B. Previous and/or potential contribution to the progress of the Company. C. Length of service and relation of the length of the proposed leave to such prior service. D. Extent, proximity, and reason for any prior leave. E. Individual considerations, such as the nature of the absence, need, and so forth. VI. EFFECT ON EMPLOYEE'S CONTINUITY OF SERVICE Service credits or credited service under the Pension *178 Plan will not be given for leaves of absence. The employee's continuous service date will be adjusted so as not to include such leaves. The employee may, however, continue Insurance Plan coverage for himself and his dependents within the terms of the General Electric Insurance Plan. Service credit is given for periods of military leave of absence up to four years and ninety days or longer if such length of service is required by law. In this instance, no formal "Leave of Absence Request" is necessary. VIII. EDUCATIONAL LEAVES OF ABSENCE A. Criterion for Eligibility: Leaves of absence for educational reasons may be granted for the purpose of 329 completing requirements leading to an undergraduate college degree or an advanced degree in the field of the employee's work. Educational leaves will be considered only for those highly competent, clearly ourstanding employees who have demonstrated their value to the Company over a sufficient period of time, usually a minimum of two years' service. B. Length of Educational Leaves of Absence: 1. The leave of absence will include only the actual time needed to complete the necessary requirements for the proposed degree. The maximum *179 length of leaves of absence will be the length of the employee's service or three years, whichever is less. 2. It is intended that the student return to work for the Company promptly upon completion of the course of study or upon withdrawal, if earlier. C. Employment During Educational Leaves of Absence: The Manager-Electronics Laboratory will consider requests for employment during any extended recesses for students who are absent on leave. Any periods of such employment would provide additional service credits, thus reducing the total amount of time deducted from the employee's continuous service. D. Financial Assistance During Educational Leaves of Absence: In those cases when the leave of absence is for the purpose of obtaining an advanced degree, the Manager-Electronics Laboratory may authorize financial assistance to employees. In the July 5, 1967, letter, Mr. Quinn informed the petitioner that: While on leave of absence, your prior services with the Company is protected although you will not accrue service during the leave. The following will summarize your position in relation to the various company benefit plans in which you may be participating. Life insurance *180 for yourself and medical coverage for yourself and dependents - Coverage may be mantained by your continuing to make the required contributions at the same rate as while you were an active employee. Personal Accident Insurance - Coverage can be maintained by your continuing to make the required contributions at the same rate as while you were an active employee. Long-term Disability Insurance - Your coverage will terminate 31 days after your last day of work or paid vacation period. You need make no contributions during this 31-day period. Pension - You will remain enrolled in the pension plan during your leave, but will not accrue credit service nor make any contributions. Upon return to active employment, credited service will begin again to accrue and you will again begin contributions in the normal manner. Savings and Security - While on leave, you will not make contributions; they can be resumed upon your return. Contributions can be left in your account and you will not forfeit the Company portion. Consult the benefit plan booklet for details if you wish to consider withdrawing any of your contributions. If you have enrolled in the Insurance Option of the S & S Program, *181 you may continue your coverage by making the required contributions (1% of your pay at the start of your leave). Product Purchase Plan - Your eligibility is the same as while you were an active employee. In the matter of the living allowance granted you, our normal procedure is to make payments by semester either at the completion of each semester or at some other point mutually agreed upon. Please see me before your leave begins so we can arrange the details of the allowance payment. Bob, speaking for the E Lab as well as myself, I want to wish you every success in your academic work. If you have any questions please feel free to contact Erm Ferris or me. We expect that you will keep us informed as to your progress and we look forward to your rejoining the Lab next spring. When the petitioner began attending school under the leave of absence, he no longer received any pay from General Electric and did not continue working for them. He did receive $1,250 in 1967 as "living allowance". His tuition was paid by the National Aero Space Agency (NASA). While in the Doctorate program at Syracuse, the petitioner's dissertation research involved a problem related to antennae. After *182 completing his year of study, the petitioner returned to General Electric as an electrical engineer and remained with them for one year. 330 Opinion Section 117(a) [2] excludes from gross income any amount received as a scholarship or fellowship grant. The law itself is silent as to the defintion of a "scholarship" or "fellowship" even though this Court has held that before a payment can be excluded under the statute it must be shown to have the "normal characteristics" associated with these terms. Elmer L. Reese, Jr., 45 T.C. 407, 413 (1966), affd. per curiam 373 F. 2d 742 (C.A. 4, 1967). The regulations supply the definitions that Congress omitted. Section 1.117-3, 4, Income Tax Regs. In doing so, they provide that amounts paid as compensation for services or primarily for the benefit of the grantor are not excludable from gross income. [3]
*183 In Bingler v. Johnson, 394 U.S. 741 (1969), the Supreme Court upheld the validity of the regulations. In doing so, it stated that: * * * The thrust of the provision dealing with compensation is that the bargained-for payments, given only as a "quo" in return for the quid of services rendered - whether past, present, or future - should not be excludable from income * * * So here, we must decide from the entire record and in light of the case law since Bingler, supra, whether the payments were "relatively disinterested", and were made to the petitioner primarily for the purpose of furthering the education of the petitioner or were made primarily for the benefit of the payor. Jerry S. Turem, 54 T.C. 1494 (1970). Certainly, the facts of record leave room for argument on both sides of the question. On the one hand, the petitioner did not continue as an employee of General Electric, he was under no obligation to return to work for them, he lost some privileges relating to company benefit plans, he was not required to submit periodic work reports to his employer, and there was no apparent relationship between the amount he received from his employer *184 and his prior salary. On the other hand, the payments were made by the petitioner's employer on a selective basis "only for those highly competent, clearly outstanding employees who have demonstrated their value to the Company over a sufficient period of time." They were made to provide "a manager with a means of protecting continuous service, maintaining a closer relationship with the employee, and encouraging the return to the company of the employee", and it was "intended that the student return to work for the Company promptly upon completion of the course of study." The course of study taken by the petitioner not only was directly related to the field of engineering, in which capacity the petitioner was employed by General Electric, but his dissertation involved antennae - the narrow area of specialization in which he 331 was involved at General Electric. In addition to these factors, the petitioner did retain some company privileges and he actually did return to his old job for approximately one year. On the basis of the entire record, we hold that the payments made to the petitioner by his employer in 1967 were primarily for the benefit of the payor and therefore are includable *185 in gross income. We reach this result because we believe that when the educational leave program of General Electric is examined from the point of view of the employer, it is clear that the business purpose transcends any desire the Company may have to further its employees education per se. First of all, we believe the payments would not have been made to the petitioner if he undertook a course of study in any other field. His studies were obviously related to his work. Once he completed his studies, it was expected that he would return to his job. It is true that he was not contractually obligated to do so, but there is ample evidence that the program was designed to induce him to return voluntarily - certainly indicating a business motive. It would seem to be quite comparable to a bonus which is often offered by employers to produce better performance or engender a better relationship with employees. The bonus is business motivated, is compensation, and is includable in gross income. The same is true of the payments involved herein. In the final analysis, it is clear that this is an area of the law in which one case will differ materially from another on the facts. However, Bingler, supra, *186 provides the ultimate test and if the necessary quid pro quo is present, as in the instant case, then the payments represent income to the recipient. Cf. Bingler v. Johnson, supra; Jerry S. Turem, supra; Lowell D. Ward, 55 T.C. 308 (1970); Harvey P. Utech, 55 T.C. 434 (1970); and Leonard T. Fielding, 57 T.C. - (March 13, 1972). Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise specified.↩
2. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule. - In the case of an individual, gross income does not include - (1) any amount received - (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or (B) as a fellowship grant, including the value of contributed services and accommodations; (2) any amount received to cover expenses for - (A) travel, (B) research, (C) clerical help, or (D) equipment, which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient. ↩
3. Sec. 1.117-4. Items not considered as scholarships or fellowship grants. The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117: * * * (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. - (1) Except as provided in paragraph (a) of § 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant.↩