WALTER L. and JANET A PETERSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Peterson v. Commissioner
Docket No. 145-72.
United States Tax Court
T.C. Memo 1974-293; 1974 Tax Ct. Memo LEXIS 25; 33 T.C.M. (CCH) 1367; T.C.M. (RIA) 740293; November 19, 1974, Filed. Walter L. and Janet A. Peterson, pro se. David R. Brennan and Karin Skeen, for the respondent. QUEALY
MEMORANDUM OPINION QUEALY, Judge: Respondent determined deficiencies in the income tax of petitioners for the taxable years 1968 and 1969 in the amounts of $453.43 and $1,127.63, respectively. This proceeding was submitted under Rule 122 of the Court's new Rules of Practice and Procedure. The only issues before the Court *26 for our determination are as follows: (1) Whether any of the amounts paid to petitioner Walter L. Peterson by Parkland Memorial Hospital (hereinafter referred to as "Parkland") during each of the taxable years 1968 and 1969 is excludable from gross income as scholarship or fellowship grants under the provisions of section 117. [1]
(2) Whether additional cash allowances paid to petitioner by Parkland during the taxable years 1968 and 1969 for food and housing are excludable from income under the provisions of section 119. All of the facts have been stipulated by the parties. The stipulated facts and the exhibits attached thereto are incorporated herein by this reference.A summary of the pertinent facts is set forth below. Petitioners are Walter L. and Janet A. Peterson whose legal residence at the time of the filing of the petition herein was Carrollton, Texas. Petitioners filed timely joint Federal income tax returns for the taxable years 1968 and 1969 with the district director of internal revenue, Dallas, Texas. The petitioners, husband and wife during *27 the years in question, are presently separated. Walter L. Peterson (hereinafter referred to as "petitioner") graduated from the University of Texas, Southwestern Medical School in Dallas, Texas, in June of 1968, and shortly thereafter received his license to practice medicine in Texas. [2]
From July 1, 1968 to June 30, 1969, petitioner was an intern at Parkland, specializing in internal medicine. From July 1, 1969 through December 31, 1969, he was a resident at the hospital. Parkland is a county hospital associated with the University of Texas, Southwestern Medical School. The selection of interns and residents at the hospital was made by the medical school. During his first year of internship, petitioner spent 6 hours of each day making rounds of the patients on the ward to which he was assigned. He made his rounds at least twice a day and would examine an average of 15 to 20 patients per round. On these rounds, petitioner reviewed laboratory data and nurses' notes, examined and visited with patients, and inscribed orders on patient *28 charts for the next 24-hour period, including the drawing of blood and X-rays as required. Petitioner spent approximately 4 hours of each day on "teaching rounds." During this period, petitioner would accompany a resident internist and a staff physician in re-examining the patients on his ward. They would review petitioner's orders and notes on his patients and offer additional comments of their own. Petitioner spent 1 hour of each day participating in a teaching conference which consisted of a lecture or a medical case presentation leading into a discussion. This time was also used for a clinical pathological conference to discuss patient death cases. Every third night, petitioner was on call. His duties on call included admitting and treating patients and preparing patient histories. In addition, petitioner also acted as the "floating" intern on four nights per month. While on the night shift, petitioner bought his dinners and all of his breakfasts and lunches at the hospital cafeteria. His costs for these meals were $109.30 per month. During his internship, petitioner was also assigned to emergency medical service for 3 months, during which period he was on and *29 off call for 36 hours at a time. When he was assigned to emergency medical service, his day began at 6:00 a.m. and ended at 6:00 p.m. the following day. His duties consisted of actively caring for emergency patients, including evaluating, treating and admitting emergency patients. For petitioner's first 6 months as a resident from July through December of 1969, he was required to make the rounds on his ward each morning. He spent 1 hour each day participating in the same teaching conference he attended as an intern. He spent one afternoon a week in the outpatient clinic examining and treating patients. For the balance of the afternoons each week, petitioner taught medical students. He reviewed case histories prepared by them and physical examinations made by them, discussed particular medical cases, gave formal lectures, and occasionally instructed the nursing staff. In addition to the above, petitioner had to make himself available late every afternoon for the supervision of interns on their afternoon calls. He was also on call every third night supervising the interns on call. Petitioner was at the hospital 7 days a week both as an intern and as a resident except for *30 2 weeks paid vacation each year. During each of his years at Parkland, both as an intern and a resident, petitioner was under contract with Parkland. By the terms of the contract, he agreed "to conform to all rules and regulations governing the institution, discharging all duties of House Staff Officer as determined by the Management and Staff." [3] Upon satisfactory completion of his duties as a resident or intern, Parkland agreed to issue a certificate indicating satisfactory performance of such duties. Such certificate would be forfeited if he failed to remain in service for the full time of his contract. The contract further provided that petitioner was prohibited from engaging in any form of private practice except in those instances which had been given prior approval and which applied to all members of the house staff. In his first year as an intern, the contract provided for the payment of a monthly allowance of $300 and an additional cash allowance of $100 per month for food and housing, whether purchased from the hospital or from the outside. During his first year as a resident, *31 the contract provided a monthly stipend of $380 and the same additional $100 per month food and housing allowance. The increase in monthly stipends between petitioner's first and second year at the hospital was not determined on the basis of either financial need or duties performed but was instead based on a fixed sum for each level of internship or residency. Parkland did not include the $100 per month food and housing allowance in petitioner's wages subject to withholding on petitioner's W-2 forms for the years 1968 and 1969. However, such amounts were included in petitioner's wages subject to FICA taxes on petitioner's W-2 forms for said years.
On his 1968 and 1969 income tax returns, petitioner excluded from income $1,800 and $3,600, respectively, of the amounts he received from Parkland as monthly stipends during such years. Petitioner also failed to include in income for such years the $100 per month meal and housing allowance received from Parkland. Respondent has determined that none of the above amounts are excludable from income. Section 117 excludes from gross income any amounts, with certain limitations, received as a "fellowship grant." [4] The statute itself *32 fails to define the meaning of such term. Section 1.117-3(c), Income Tax Regs., however, defines "fellowship grant" as "an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research." Section 1.117-4(c), Income Tax Regs., further provides that amounts paid as compensation for services or primarily for the benefit of the grantor are not to be considered as fellowship grants for purposes of section 117: § 1.117-4 Items not considered as scholarships or fellowship grants. The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117: * * * (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of § 1.117-2, any amount paid or allowed to, or on behalf of, *33 an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor.
However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character *34 of such amount as a scholarship or fellowship grant. The Supreme Court in Bingler v. Johnson, 394 U.S. 741, 751 (1969), upheld the validity of these regulations as reflecting "the ordinary understanding of "scholarships' and "fellowships' as relatively disinterested, "no-strings' educational grants, with no requirement of any substantail quid pro quo from the recipients." The crucial test of the above regulations is whether the primary purpose of the amounts paid is to further the education and training of the recipient or to compensate him for services rendered. Elmer L. Reese, Jr., 45 T.C. 407, 411 (1966), affirmed per curiam 373 F.2d 742 (C.A. 4, 1967). More succinctly, the question is whether the taxpayer was "paid to work or paid to study." Stephen L. Zolnay, 49 T.C. 389 (1968). On the basis of the facts before us, we find that petitioner was paid to work during the years in question and that the primary purpose of the monthly stipend received by him from Parkland was to compensate him for services rendered at the hospital. See Geral W. Dietz, 62 T.C. 578 (1974).
Throughout his internship and residency *35 at Parkland, petitioner was under formal contract with the hospital to perform services as directed. If petitioner had failed to perform such services, he would have forfeited his right to receive a certificate from Parkland indicating satisfactory performance.In addition, petitioner was prohibited from engaging in private practice, except with the permission of the hospital. We cannot infer a disinterested, "no strings attached" motive on the part of Parkland in entering this type of contractual arrangement. Petitioner performed significant and substantial services to the hospital in treating its patients. Although he was initially subject to supervision, it is apparent that the more proficient petitioner became in his duties, the more perfunctory was the staff guidance. The hospital derived a valuable benefit from petitioner's presence. Almost all the duties he or the other residents performed at Parkland would have required the attention of a staff physician had he not been available. The compensatory nature of the monies petitioner received from Parkland is further reflected by the fact the recipients were not selected on the basis of need. This has been one of the hallmarks *36 of fellowship grants. Aloysius J. Proskey, 51 T.C. 918 (1969). Each intern or resident was instead paid a fixed sum based on his level of experience. The fact that petitioner derived substantial educational experience from his intern and residency training does not in any way diminish the compensatory nature of the payments received from Parkland. We also find that the monthly food and housing allowance received by petitioner during the years in question are inseparable from the monthly stipend award. Both the allowance and the stipend arose from the same contract and their continuance was subject to the same conditions of performance. The allowance was characterized by the contract itself as "an additional cash allowance." Even if viewed as severable, however, such allowance cannot be characterized as being for "the convenience of the employer" within the meaning of section 119. It mattered not to Parkland whether the interns and residents lived or ate on the hospital premises so long as they were able to perform their duties. Indeed, the contract itself states the payments were made to cover the cost of food and housing "whether purchased from the hospital *37 or purchased outside." Clearly, the food and housing allowance was merely additional compensation to petitioner for services rendered.
In accordance with the above, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Janet A. Peterson is a party to this proceeding only by virtue of her having filed joint Federal income tax returns with her husband. ↩
3. The term "House Staff Officer" is commonly used to refer to residents and interns. ↩
4. Since petitioner is a nondegree candidate, the exclusion available under sec. 117 is limited by sec. 117(b) (2) (B) "to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or fellowship grant during such taxable year" up to 36 months. ↩