CHARLES and MARIE-CLAIRE McKENNA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McKenna v. Commissioner
Docket No. 11090-77.
United States Tax Court
T.C. Memo 1979-370; 1979 Tax Ct. Memo LEXIS 155; 39 T.C.M. (CCH) 135; T.C.M. (RIA) 79370; September 11, 1979, Filed *155 P, who was a candidate for a doctorate degree, served as a teaching assistant and received funds from the university. Held, such funds were not excludable from income as a scholarship or fellowship grant under sec. 117(a), I.R.C. 1954. Charles and Marie-Claire McKenna, pro se. Ruth E. Salek, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $1,040.00 in the petitioners' Federal *156 income tax for 1974. The petitioners conceded several issues before trial; the sole issue remaining for decision is whether Mrs. McKenna, who was a candidate for a doctorate degree and served as a teaching assistant, may exclude from gross income under section 117, Internal Revenue Code of 1954, the funds which she received from the university. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Charles McKenna and Marie-Claire McKenna, husband and wife, resided in Los Angeles, Calif., at the time they filed their petition in this case. They filed their joint Federal income tax return for 1974 with the Internal Revenue Service. Mrs. McKenna will sometimes be referred to as the petitioner. In 1974, the petitioner was a candidate for the Ph.D. degree in chemistry at the University of Southern California (USC). During that year, she worked in the chemistry department as a teaching assistant. Her duties required her to attend two 3-hour laboratory sessions each week at which she assisted the students. She was also required to grade examination papers and to assist in deciding on the grades given to *157 students. In addition, she was required to hold office hours for 2 hours each week to be available to counsel the students. In performing these duties, the petitioner was under the close supervision of a USC faculty member, and her work was graded. The teaching assistant program in the USC chemistry department served three purposes. First, the program fulfilled vital needs of the department for laboratory supervision, exam grading, and student counseling. Without the teaching assistants, USC would have had to hire additional, though perhaps less costly, staff to perform such services. Second, the program was the vehicle through which the chemistry department administered its requirement that all candidates for advanced degrees, with a very few exceptions, have teaching experience. The department believed teaching experience to be valuable for almost any field in which a chemist with an advanced degree might work. Virtually all of the candidates for a doctorate degree in chemistry at USC satisfied the teaching requirement by serving as a teaching assistant. Third, the program satisfied the chemistry department's desire to provide aid to its students. It was customary in *158 the department for virtually all students to receive aid in one form or another, some from outside sources, some from research positions within USC, and the great majority through the teaching assistant program. In 1974, 56 of the 68 candidates for a Ph.D. degree were serving as teaching assistants. In keeping with this custom, USC sought to make teaching assistantships as parking privileges, and the right to participate in grievance procedures. USC paid Mrs. McKenna $3,702.23 for her services as a teaching assistant in 1974. In their joint Federal income tax return for 1974, the petitioners excluded this amount from income. In his notice of deficiency, the Commissioner disallowed the exclusion on the ground that the payments were compensation for services and not a scholarship or fellowship grant excludable under section 117. OPINION The sole issue before the Court is the often litigated question of whether a student's payments as a teaching assistant are excludable from income under section 117(a). That section excludes from income amounts received as a scholarship or fellowship grant. In the case of degree candidates, section 117(b)(1) imposes a limitation on this *159 exclusion: the exclusion does not apply to "any amount received which represents payment for * * * services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant." However, section 117(b)(1) also provides that if similar services "are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such * * * services shall not be regarded as part-time employment * * *." As a teaching assistant, the petitioner performed services for which she was paid; but since teaching experience was required of all candidates for the Ph.D. degree in chemistry at USC, she seeks to fit her case within the exception to the limitation provided by section 117(b)(1). However, a number of cases establish that the fact that services are required of all degree candidates is not, in and of itself, determinative; in order for payments to be excludable from income under such section, the payments must initially be found to have the characteristics of a scholarship or fellowship grant. Adams v. Commissioner,71 T.C. 477 (1978); Zolnay v. Commissioner,49 T.C. 389 (1968); *160 Reese v. Commissioner,45 T.C. 407 (1966), affd. per curiam 373 F. 2d 742 (4th Cir. 1967). The terms "scholarship" and "fellowship grant" are not defined in the statute. Section 1.117-3, Income Tax Regs., defines them as amounts paid to an individual to aid him in studies or research. Section 1.117-4 also provides that amounts paid to an individual to enable him to pursue studies are considered scholarships or fellowship grants "if the primary purpose of the studies of research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services." However, such section provides, in addition, that the terms do not include any amount paid which represents "either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor," or which are paid to an individual to allow him "to pursue studies or research primarily for the benefit of the grantor." These regulations have been sustained by the Supreme Court in Bingler v. Johnson,394 U.S. 741, 751 (1969):
*161 the definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of "scholarships" and "fellowships" as relatively distinterested, "no-strings" educational grants, with no requirement of any substantial quidproquo from the recipients. In Adams v. Commissioner,supra, we applied the test of a quidproquo to a medical intern and held that since the intern was required to perform substantial services for the hospital, the payments received by him did not qualify as a fellowship grant. The intern argued that the internship was a part of his required training and served to complete his education. Nonetheless, the Court held those considerations to be irrelevant since, in fact, he was required to render substantial services to the hospital in return for the stipend received by him. Under the holdings in Bingler and Adams, the outcome in this case is clear. The starting point, of course, is the fact that the petitioner was required to render her services--a quidproquo--in order to receive the payments. Thus, the only question is whether the quid *162 proquo was substantial. We hold that it was. The petitioner received about $3,700 in 1974. In return, she worked about 10 hours per week while school was in session. The record does not reveal the length of the school ear at USC, but we may conservatively assume that it lasted between 30 and 40 weeks; thus, she received in the neighborhood of $100 per school week. There is no question that 10 hours of valuable services for $100 is a more than substantial quidproquo. Professor Gerald Segal, chairman of the chemistry department, testified that the services of the teaching assistants (laboratory supervision, exam grading, and student counseling) were indispensable to USC and that, in the absence of the teaching assistants, USC would have to hire additional staff to furnish the services. Although Professor Segal thought that USC might have been able to hire other staff to replace the teaching assistants at less cost, there is no evidence showing that the petitioner's services were not worth the amounts received by her. Our conclusion that the payments received by the petitioner do not qualify as a scholarship or fellowship grant is also supported by the *163 precedents which have applied the primary purpose test of the regulations to similar factual situations. See, e.g., Meehan v. Commissioner,66 T.C. 794 (1976); Zolnay v. Commissioner,supra;Reese v. Commissioner,supra; cf. Steiman v. Commissioner,56 T.C. 1350 (1971). The cases have generally found that the primary purpose of teaching assistantships is not to further the education and training of the recipient, but to compensate him for services rendered and that, therefore, the payments cannot be termed scholarships or fellowship grants. Decision will be entered under Rule 155.