ANTHONY JOSEPH PIAZZA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Piazza v. Commissioner
Docket No. 1248-87.
United States Tax Court
T.C. Memo 1989-11; 1989 Tax Ct. Memo LEXIS 11; 56 T.C.M. (CCH) 1027; T.C.M. (RIA) 89011; January 10, 1989
Anthony J. Piazza, pro se. Stewart T. Hittinger, for the respondent. RUWE
MEMORANDUM OPINION RUWE, Judge: Respondent, in a statutory notice dated December 10, 1986, determined deficiencies in petitioner's Federal income taxes for the taxable years 1982 and 1983 in the amounts of $ 1,773.24 and $ 955.41, respectively. After concessions, the sole issue for decision is whether payments received by petitioner, a psychology intern, are excludable from gross income as scholarships or fellowship grants under section 117. [1]
*12 All of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Royal Oak, Michigan, at the time he filed the petition in this case. Petitioner was a doctoral student in clinical psychology at the University of Detroit in Detroit, Michigan during the years in issue. In order to receive his Ph.D. from the University of Detroit, petitioner was required to complete an internship in an agency approved by the University of Detroit. To fulfill this requirement, petitioner served as a clinical psychology intern at the Detroit Psychiatric Institute (the Institute) for two years, from September 1981 to August 1983. Petitioner received payments of $ 5,831.40 in 1982 and $ 3,500.00 in 1983 from the State of Michigan for his participation in the internship program. The Institute is an agency of the Department of Mental Health of the State of Michigan, and is also a part of the Department of Psychiatry of the Wayne State University School of Medicine. During the years in issue, the staff at the Institute consisted of psychiatrists, psychologists, psychiatric residents, social workers, psychiatric *13 nurses, and aides. These positions were filled either on a part-time or full-time basis. In selecting applicants to the internship program, the Institute considered the applicant's prior education, experience, and training. No consideration was given to the applicant's financial need. At the time petitioner was participating in the internship at the Institute, he held a Bachelor of Arts in psychology from Villanova University in Villanova, Pennsylvania, and a Master of Arts in Developmental Psychology from Columbia University in New York, New York. The stipend for the internship program year from September 1981 through August 1982 was a set sum of $ 6,000. All of the participants in the internship program were paid this amount in the program year. Participants were expected to devote 20 hours per week to the program. The stipend paid for the internships from September 1982 through August 1983 varied depending on the applicant's choice of options. The options, contained in a letter to petitioner dated April 5, 1982, were: 1) a. You may keep the current half-time internship [20 hours per week] for $ 6,000, but you will be expected to given an additional five hours per *14 week to the Adult Inpatient Service. Very likely this will be comprised of being the primary therapist for one inpatient, working closely with a more experienced inpatient therapist-supervisor. b. You may decline to do the additional five hours of work and keep the regular internship, but your stipend would be $ 5,000. 2) You may add 15-16 hours per week to your internship, which would then be considered full-time. You would be paid $ 8,500, and you would then be spending time on the AIPS as a primary therapist for around four patients. This would be a program very similar to the current postdoctoral program at DPI. 3) You may change your half-time internship from an exclusively outpatient one to an exclusively inpatient program for a stipend of $ 6,000. This may appeal to someone who has had extensive outpatient work already, or who is concurrently in other contexts receiving supervised outpatient experience. Petitioner elected to continue to work half-time, 20 hours a week, but to receive a reduced stipend of $ 5,000 for his second program year, September 1982 through August 1983. The decrease in the stipend from the amount paid in the September 1981 through August *15 1982 internship year to the amount paid in the September 1982 through August 1983 internship year was due to overall budget cuts at the Institute. As a result of a State of Michigan budget crisis, the staff was asked to reduce hours or work the same hours for reduced or deferred pay. Despite budget cuts, the Institute intended to provide services to patients at the same level. The increased emphasis on inpatient service in the program for September 1982 to August 1983 was prompted by attempts to conform the internship more closely to the American Psychological Association's (APA) criteria for accreditation. One of the goals of the Institute was to become an internship site with official APA approval. During petitioner's first internship year, the stipend an intern received was not affected by the actual number of hours spent at the facility or the amount of direct patient contact. During petitioner's second internship year, once an intern selected a program option, the stipend an intern received was not affected by the actual number of hours spent at the facility or the amount of direct patient contact. The funding of the internship program was a separate budget item from *16 regular employee budgets of the Institute. During each of petitioner's internship years, petitioner was expected to be involved in the program 20 hours per week, but he was often involved in the program for more than 20 hours. Any internship time that was missed due to the intern's illness or other circumstances was expected to be rescheduled. During each year petitioner received two weeks of paid vacation and two weeks of paid time to work on his dissertation, however, he received no other employee benefits. There was no written contract of employment between the Institute and petitioner, and there was no contractual obligation or other understanding that petitioner would be employed by the Institute at the conclusion of his internship. Petitioner generally handled three patients for a long-term therapy program lasting between one and two years. Petitioner met with each patient two or three times a week for 45 minute sessions. He averaged five sessions per week and seldom had more than eight sessions per week. The sessions were all documented with "process notes" (a word for word written record of the session) which took approximately one to one and a half hours to prepare *17 for each session. The process notes were read to a supervisor and discussed with him or her. Petitioner also administered psycho-diagnostic evaluations or tests which ordinarily took two hours each week. Petitioner attended educational seminars, case conferences, and staff meetings on an average of seven hours each week. Petitioner also spent some internship time reading books and journals which were related to his dissertation. Petitioner had an advisor at the Institute with whom he discussed his general progress during the internship. Petitioner also had a supervisor for each of his three individual psychotherapy patients, and a supervisor for his psycho-diagnostic evaluations. He met with each of his three psychotherapy supervisors for one hour per week, and with his psycho-diagnostic supervisor one and one-half hours per week, whether or not he had an active case at the time. Petitioner also had a dissertation supervisor who spent three to five hours a month meeting with petitioner during his internship. The level and amount of supervision remained the same during both of the years of the internship and did not decrease due to petitioner's increased proficiency, ability, *18 or understanding. Petitioner's supervisors were not present during the time which he spent with patients. The supervisors never met with the patients who were being treated by petitioner. Petitioner was permitted to initiate treatment only under the direction of his supervisors. Petitioner bears the burden of proving that the amounts he received are within the definition of a scholarship or fellowship grant. Olick v. Commissioner,73 T.C. 479, 486 (1979); Rule 142(a). Section 117(a)(1) generally excludes from gross income any amount received as a scholarship or fellowship grant. Although the statute does not define the terms "scholarship" or "fellowship grant," the regulations define each as amounts paid to an individual to aid him in the pursuit of study or research. Sec. 1.117-3(a) and (c), Income Tax Regs.
For individuals who are degree candidates, section 117(b)(1) imposes a limitation upon this exclusion. The exclusion does not apply to "that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship *19 grant." Sec. 117(b)(1). Section 117(b)(1) further provides, as an exception to that limitation, that services required of all candidates as a condition for receiving a particular degree shall not be regarded as part-time employment. The fact that the services are required of all degree candidates does not, in and of itself, determine whether the payments at issue constitute an excludable scholarship or fellowship. The payments still must have the characteristics of a scholarship or fellowship grant. Brubakken v. Commissioner,67 T.C. 249 (1976); Rosenthal v. Commissioner,63 T.C. 454, 460-461 (1975); Reese v. Commissioner,45 T.C. 407, 413 (1966), affd. per curiam 373 F.2d 742 (4th Cir. 1967). To be excludable under section 117, payments must comport with "the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no strings' educational grants, with no requirement of any substantial quid pro quo from the recipients." Bingler v. Johnson,394 U.S. 741, 751 (1969). Under the regulations, the distinction between a scholarship or a fellowship grant and compensation *20 turns on whether the primary purpose for making the payments was to enable the recipient to further his education or training in his individual capacity or whether the primary purpose was to compensate him for past, present, or future services. Sec. 1.117-4(c)(1) and (2), Income Tax Regs.; Brubakken v. Commissioner, supra at 255, and cases cited therein. The focus is on the primary purpose for which the payments are made, not the taxpayer's motives nor the purpose of the program. See Rosenthal v. Commissioner, supra at 459. To determine the primary purpose of the payments, we must consider the facts and circumstances of each case. Brubakken v. Commissioner, supra at 258. The exclusion from taxation of scholarship or fellowship payments is to be narrowly construed. Bingler v. Johnson, supra at 752. In this case, in order to receive his Ph.D., petitioner was required to complete an internship in an agency approved by the University of Detroit. To fulfill this requirement, petitioner served as a clinical psychology intern. Petitioner received payments for his participation in the internship program. If the primary *21 purpose underlying the payments was to compensate petitioner for his services, the payments are not excludable from petitioner's income. Petitioner rendered valuable services to the Institute. Petitioner spent a substantial amount of time caring for and treating patients. He averaged five 45 minute sessions with patients each week. Petitioner prepared "process notes" for each session. These notes took one to one and a half hours to prepare for each session. Petitioner also administered psychodiagnostic evaluations or tests which ordinarily took two hours each week. Petitioner attended staff meetings, case conferences, and educational seminars on an average of seven hours each week. Petitioner offered no evidence of how much time other half-time employees spent in direct patient contact, staff meetings, and case conferences. Petitioner's activities were not so strictly supervised that the value of his services was insignificant. Brubakken v. Commissioner, supra at 257. Although petitioner could initiate patient treatment only under the direction of supervisors, petitioner met with and treated the patients. Supervisors never met with patients who were being *22 treated by petitioner. The fact that the Institute required petitioner to devote 20 hours a week or more to the program indicates that the Institute expected a quid pro quo for the internship payments. In April of 1982 budget cuts and the Institute's desire to maintain its level of patient services caused it to modify the terms of stipends for petitioner's second internship program year. Interns were given the option of increasing their hours from 20 to 25, and receiving the same $ 6,000 stipend, or working 20 hours doing the same type of work and receiving a reduced stipend of $ 5,000. Another option allowed interns to work an additional 15 to 16 hours per week in exchange for payment of $ 8,500. This method of fixing the amount of stipends demonstrates a direct correlation between services rendered and the amount of payment, which is characteristic of compensation. One of the options allowed interns to be paid the same $ 6,000 for the same 20 hours if they changed from treating outpatients to treating inpatients. While the Institute was interested in emphasizing inpatient service to obtain accreditation for its internship program, we do not think that this negates a finding *23 that the stipends being given to interns constituted a quid pro quo for services. The amount paid depended upon the value to the Institute of the hours worked or the type of services performed. The fact that the internship was not based on financial need, and the fact that each intern was entitled to two weeks leave annually, also indicate that the primary purpose of the payments was compensation. Weinberg v. Commissioner,64 T.C. 771 (1975). We have no doubt that the internship was a valuable educational experience for petitioner. However, based on the facts presented, we find that the primary purpose of the payments was compensation for services rendered. The amounts which petitioner received in connection with his internship are not excludable from income. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and as in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩