JOHN W. KLEIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT
Klein v. Commissioner
Docket No. 7275-70
United States Tax Court
T.C. Memo 1973-70; 1973 Tax Ct. Memo LEXIS 215; 32 T.C.M. (CCH) 301; T.C.M. (RIA) 73070; March 27, 1973, Filed John W. Klein, pro se. Robert J. Murray, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined a deficiency in petitioner's Federal income tax in the following amounts: Year
Deficiency
1967
$246.59
1969
498.00
The only issue for our determination is whether amounts received by the petitioner from the Nebraska Soil and Water Conservation Commission qualify as amounts received from a fellowship grant which are excludable from gross income under the provisions of section 117, Internal Revenue Code of 1954. [1] 2 Some of the facts have been stipulated and are *216 so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioner John W. Klein is an unmarried individual residing at the time of the filing of the petition herein at Lincoln, Nebraska. The petitioner filed timely individual tax returns for the calendar years 1967 and 1969, and an amended return for 1967 filed February 27, 1969, with the district director of internal revenue at Kansas City, Missouri. Petitioner received both a Bachelor of Arts degree in economics and a Juris Doctorate degree from the University of Nebraska (hereinafter the University). From August 1, 1967 through August 23, 1968, petitioner was a candidate for a Master of Arts degree in economics at the University. From August 24, 1968 through December 31, 1969, the petitioner was a candidate for a Ph.D. in economics, also at the University. During all relevant periods herein, the University was an educational institution maintaining a regular faculty and curriculum and having an organized body of students in attendance. The University required all candidates for a Ph.D. in economics to conduct research and prepare a written dissertation *217 in some area of their field of study. The Nebraska Soil and Water Conservation Commission (hereinafter referred to as NSWCC) is an agency of the State of Nebraska. During the years in issue its major functions were 3 soil and water conservation, flood control and prevention, and state water planning.The NSWCC has both supervisory and advisory powers over local agencies such as "Watershed Conservancy Districts", which actually construct flood control structures. In order to build flood control structures, it is necessary for local watershed districts to obtain flowage easements. As early as 1960, the NSWCC became concerned about flowage easements because local watershed sponsors were experiencing difficulty in making appraisals on structure sites. Between 1960 and 1967 the NSWCC made several attempts to resolve the problems of appraising and acquiring flowage easements, including a proposed research project in conjunction with the University of Nebraska and the interchanging of ideas among local watershed conservancy districts. By 1966, the NSWCC felt this problem was acute. On July 26, 1967, the NSWCC met with the petitioner to discuss the possibilities of having the *218 petitioner conduct research and prepare a report in the area of appraising flowage easements. After this meeting the following memorandum was prepared by the NSWCC: NEBRASKA SOIL AND WATER CONSERVATION COMMISSION State Capitol Building Lincoln Nebraska
July 27, 1967 TO: File FROM: Gayle Starr SUBJECT: Land Rights Study 4 Warren, Dayle, and I met with John Klein on Wednesday, July 26 to discuss the possibilities of John doing some research on land rights acquisition in relation to P.L. 566 projects. John is a student at the University of Nebraska and will be beginning a doctorate program in economics in September. He has a B.S., M.S., and law degree from U. of N. John indicated that he had visited with Richard Harnsberger, Jim Greer, and Maurice Baker at the University, and they have informed him that they would be willing to help out and give assistance in this project. However, they have no funds to support it. The SCS has also indicated that they will cooperate as much as possible; however, they also have no specific funds to put into this.
Warren offered John the opportunity to do this research as a part-time Commission employee. He will begin in about two *219 weeks and anticipates being able to work about one-half time. We anticipate that the overall project will involve about two years time. The research would be used to develop a publication and for a thesis project. Administratively, John will be in the Operations Section and will be responsible to Dayle. Originally, this project was envisioned as being developed by the University with financial assistance from the Water Resources Research Institute. We were unable to get it funded this year. However, we hope to pursue it further next year so that the University will be able to get more actively involved. John, Dayle, and I will work with the University in an effort to get this project approved as a Water Resources Research Institute project. The petitioner hoped to use the results of this research as a basis for his required Ph.D. dissertation. Further the NSWCC intended to publish the results of the project through the University of Nebraska Agricultural Extension Service. Prior to commencing the research, the petitioner had never been employed by the NSWCC, nor was petitioner obligated to become an employee or supply services to the NSWCC after completion of the project. *220 5 It was orally agreed that the results of the research were to be objective and unbiased, and that the results need not have been favorable to the NSWCC or any special interest group. The petitioner was paid $3.00 per hour, an amount similar to that received by other students conducting part-time research. The petitioner received no health insurance benefits, annual leave, sick leave, or seniority rights from the NSWCC. The NSWCC does not have the authority to award scholarship or fellowship grants. During the conduct of the research the petitioner was not required to and did not maintain regular hours or keep a tabulation of the total number of hours devoted to the research. However, the petitioner was required to sign time sheets in order to receive funds from the NSWCC. The following funds were paid to the petitioner during the course of the project by the NSWCC: Year
Amount
1967
$1,218.00
1968
3,786.00
1969
3,180.00
Total
$8,184.00
Payment checks were mailed directly to the petitioner's residence. Federal and State income and FICA taxes were withheld from each check and W-2 forms were sent to the petitioner. These checks were paid *221 through the personnel account of NSWCC because that was their only method for vending funds to the petitioner. 6 The petitioner was allowed to establish his own research methods. During the 1967-68 and 1968-69 academic years, the petitioner conducted over 80 percent of his research outside the offices of the NSWCC. During the summers of 1967 and 1968, the petitioner conducted over 50 percent of his research outside the offices of the NSWCC. The petitioner was required to make written and oral progress reports to representatives of the NSWCC. The petitioner met frequently with his supervisors to discuss his progress on the project. The petitioner to date has not supplied any written reports, results, findings or data to the NSWCC. By the summer of 1969 it became apparent that the petitioner was not going to complete the project within the allotted time. In the Spring of 1970 the petitioner was contacted by a representative of the NSWCC and told, "We want our product." OPINION The sole issue for our determination is whether the amounts received by the petitioner from the Nebraska Soil and Water Conservation Commission constitute amounts paid pursuant to an excludable *222 fellowship grant within the meaning of section 117. [2]
*223 Section 117 provides an exclusion from gross income of any amount received as a scholarship or fellowship grant. Proper reading of the statute requires that in order for the exclusion to be viable, there must be a determination that the payment sought to be excluded has the normal characteristics of the term "fellowship grant." Elmer L. Reese, Jr., 45 T.C. 407 (1966), affd. per curiam 373 F. 2d 742 (C.A. 4, 1967). Section 1.117-3(c), Income Tax Regs. states, "A fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research." 8 An amount paid to an individual to pursue studies or research will not be considered a fellowship grant if it represents compensation for past, present or future services. Sec. 1.117-4(c) (1), Income Tax. Regs.[3] The Supreme Court has held that amounts paid by a grantor in a quid pro quo situation are not deemed to be within the purview of section 117. Bingler v. Johnson, 394 U.S. 741 (1969). However if the primary purpose of the grant is to further the education and training of the recipient, then the amount can qualify as *224 a fellowship. Sec. 1.117-4(c) (2), Income Tax Regs.
*225 9 After carefully reviewing all the facts, we are convinced that the petitioner was receiving compensation from the NSWCC rather than a fellowship. The testimony of petitioner's supervisor and the NSWCC memorandum of July 27, 1967 indicate to us that the primary purpose served by the payments given petitioner was to aid in the preparation of a report vital to the NSWCC in its supervisory capacity. Though flowage easements were not secured by the NSWCC, it is apparent that they served an important function in alerting local watershed conservancy districts of methods to alleviate problem areas, such as the appraisal and acquisition of flowage easements for flood control structures. Therefore, though petitioner was able to use this research project as a basis for his Ph.D. dissertation, a substantial quid pro quo relationship existed between the NSWCC and the petitioner. Hembree v. United States, 464 F. 2d 1262 (C.A. 4, 1972); Harvey P. Utech, 55 T.C. 434 (1970).
Petitioner was given a great degree of freedom in conducting this project. But the evidence shows that he met frequently with his supervisors to give oral progress reports. His failure *226 to deliver a finished product does not alter our opinion that he was compensated for services. Furthermore, the NSWCC considered him an employee. Howard Littman, 42 T.C. 503 (1964). He was paid from personnel funds, taxes 10 were withheld, [4] and his compensation was similar to that received by other part-time student researchers for the NSWCC. Elmer L. Reese, Jr., supra, at 411. The NSWCC did not have any authority to grant scholarships or fellowships. Harvey P. Utech, supra, at 440. Nor was there any evidence showing an intent on the part of the NSWCC to create a fellowship. We have no doubt that petitioner considered the research project as primarily important to him for its educational value. But there is "nothing in section 117 that requires an amount paid as compensation for services rendered be treated as a nontaxable fellowship grant merely because the recipient is learning a trade, business, or profession." Ethel Bonn, 34 T.C. 64, 73 (1960). Whatever educational benefit the petitioner may *227 have received from conducting research for the NSWCC, it was secondary to the purpose for which the petitioner was hired, that being the preparation of materials which could be used by the NSWCC in supervising local watershed conservancy districts. Decision will be entered for the respondent. Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated. ↩
2. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) GENERAL RULE. - In the case of an individual, gross income does not include - (1) any amount received - 7 (A) as a scholarship at an educational institution (as defined in section 151(e) (4)), or (B) as a fellowship grant, including the value of contributed services and accommodations; and (2) any amount received to cover expenses for - (A) travel, (B) research, (C) clerical help, or (D) equipment, which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient. [Sec. 117(b)] (b) LIMITATIONS. - (1) INDIVIDUALS WHO ARE CANDIDATES FOR DEGREES. - In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151(e) (4)), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph. ↩
3. Sec. 1.117-4(c)
(c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of §1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117↩ if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant. 4. The fact that taxes were withheld is itself inconclusive. See Chander P. Bhalla, 35 T.C. 13, 17↩ (1960).