FRED D. AND DORIS J. HAYGOOD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Haygood v. Commissioner
Docket No. 9399-75.
United States Tax Court
T.C. Memo 1977-71; 1977 Tax Ct. Memo LEXIS 369; 36 T.C.M. (CCH) 321; T.C.M. (RIA) 770071; March 21, 1977, Filed *369 Petitioner was a surgical resident at Charity Hospital, New Orleans, Louisiana and two other local hospitals. He received bimonthly payments from the respective hospital where he was working. At Charity Hospital, such bimonthly payment was divided into two paychecks -- one check withholding Federal, state and social security taxes, based on one-half of said bimonthly amount; the other check, without withholding, designated as a nontaxable stipend per Louisiana Revised Statutes 46:922. Held, payments to petitioner do not constitute a scholarship or fellowship grant excludable under sec. 117, I.R.C. 1954. Held further, the resolution of the issue of whether petitioner was paid to work or study is not determined by local legislation but is based upon all the facts and circumstances of the particular case. Held further, petitioner has not substantiated his medical expense deduction. Fred D. Haygood, pro se. H. Steven New and Genelle F. Schlichting, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1972 in the amount of $762.44. The issues for decision *370 are: (1) whether certain payments received in 1972 by petitioner, Fred D. Haygood, qualify as a fellowship or scholarship grant within the meaning of section 117, I.R.C. 1954; and (2) whether petitioners are entitled under section 213(a)(2) to deduct $150 for medical insurance. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners, Fred D. and Doris J. Haygood, husband and wife, resided in Tyler, Texas at the time they filed their petition herein. Petitioners filed a joint Federal income tax return for the calendar year 1972. [1] Doris J. Haygood is a party to this action only because she joined in the filing of this return and, accordingly, Fred D. Haygood hereinafter shall be referred to as petitioner. In June 1967, petitioner received a Doctor of Medicine degree from Baylor University, College of Medicine, Houston, Texas. Petitioner was licensed in August *371 1967 by the Texas State Board of Medical Examiners to practice medicine in the State of Texas. In 1968 petitioner completed a one-year rotating internship at the John Gaston Hospital in Memphis, Tennessee. Petitioner was also licensed in December 1970 by the Louisiana State Board of Medical Examiners to practice medicine in the State of Louisiana. For the year in issue, 1972, petitioner was a resident in the Tulane University department of surgery residency program. Petitioner was registered as a student with the Tulane University department of graduate and postgraduate medical studies and paid an annual registration fee to Tulane University. Tulane University School of Medicine has a coordinated medical residency training program with several hospitals including Charity Hospital of New Orleans (Charity). Both the intern and the residency program at Charity are under the direction of two medical school divisions, Tulane and Louisiana State University. Each of these divisions is composed of staff physicians and surgeons comprising the medical faculty of each specific division. A medical residency program director, in each specialty, is also the chairman of the department of *372 that specialty in the respective medical school. The chairman of the Tulane department of surgery in 1972 was Dr. Theodore Drapanas. To be certified by the American Board of Surgery as a qualified surgeon a doctor must, in addition to other requirements, satisfactorily complete four or more years of graduate responsibility in clinical surgery, following graduation from medical school, in a clinical program acceptable to the Board. From January through June of 1972 petitioner was in the last half of his second year of surgical residency; and from July through December 1972 he was in the first half of his third year of such residency. In 1972 petitioner was not a candidate for a degree. The training and any services performed by petitioner in the Tulane affiliated hospitals were subject to the direction, supervision and control of the members of the surgical faculty staff of Tulane University department of surgery. Dr. Drapanas had the authority to dismiss petitioner at any time during his residency for just cause. Dr. Haygood was required, for each year of his residency, to sign a resident contract whereby he accepted appointment at Charity [2] and agreed to abide by the rules and *373 regulations of the hospital. Said contract stated, in part, "It is also understood that during the tenure of this appointment I may be temporarily assigned duties in another State or General Hospital upon the Recommendation of the Chief of Service for the benefit of my training." Furthermore each annual contract provided a fixed monthly stipend as follows: Contract Dates
Year of Residency [3]
Stipend
7/1/70-6/30/71
First $650
7/1/71-6/30/72
Second
700
7/1/72-6/30/73
Third
700 During 1972 as a second and then a third year residen Dr. Haygood, a junior resident, did not have ultimate authority over patients. The attending faculty staff surgeon or a senior resident (fourth year resident) *374 had ultimate responsibility for patient care. The faculty staff at the hospitals where petitioner trained were not, necessarily, members of such hospital's staff but staff members of private hospitals coming to Charity and its affiliated hospitals to work with the residents. In January and February of 1972, Dr. Haygood was paid bimonthly by the Baptist Hospital of New Orleans (Baptist). He was a second year resident assigned to the service of Dr. Walter Becker, a private surgeon practicing in New Orleans, Louisiana. Baptist is a private hospital and all Dr. Becker's patients were his private patients. Petitioner evaluated and discussed patient care with Dr. Becker as well as assisting him at the operating table. More specifically, when Dr. Becker would admit his patients to Baptist, petitioner would do a history and physical on the patient; Dr. Becker would do the same. Dr. Becker would then review petitioner's patient work-up and offer suggestions to improve or change his technique.Petitioner made daily morning rounds seeing each of Dr. Becker's patients, checking on their condition and attending to their medical needs. Usually, Dr. Becker was not present during petitioner's *375 morning rounds; on the daily afternoon rounds Dr. Becker accompanied petitioner. At Baptist petitioner had a patient load of approximately 10 to 15 patients at any one time. He did not serve emergency room duty while at Baptist. In March and April 1972 Dr. Haygood trained at Veterans' Administration Hospital (Veterans) on general surgery service. His patient load was approximately 15-20. These patients were assigned to the senior resident and petitioner was assigned to work under the senior resident. Again, petitioner made daily morning and afternoon rounds and his supervisor (the senior resident) did not always accompany him on such rounds. Petitioner performed several operations a month, in the presence and supervision of the senior resident, during this two month rotation at Veterans. Petitioner was on hospital emergency call from his home approximately every fourth night. At Charity Hospital, from May through December 1972, petitioner's patient load was approximately 15 to 20, performing approximately 8 to 12 operations per month. He was constantly dismissing and receiving patients and was required to be at the hospital on emergency duty call approximately every fourth *376 night. On this night call if minor surgery was necessary Dr. Haygood would operate with the senior resident assisting; if major surgery was required, the senior resident would operate with petitioner assisting. The following describes petitioner's required rounds at Charity: TULANE SURGICAL SERVICE ROUNDS
1. Work Rounds are to be conducted every morning before operating, staff rounds, and clinics. All patients, including those in the recovery room and intensive care unit, must be seen on each service. This includes the intern, first and third year residents and the senior resident if needed. Daily progress notes are required on all acute care patients. 2.Staff Rounds on each service will occur three times weekly. The time and place of meeting will be coordinated by the third year resident and staff man. Acknowledgement of each visit by the staff, and his recommendations are to be recorded in the progress notes. 3. Senior Resident Rounds will generally be conducted every afternoon and include every patient. 4. Dr. Drapanas' Walking Rounds will be conducted Thursday afternoons. Time and meeting place will be announced. The entire surgery intern and resident corp is expected *377 to attend and participate. 5. Surgical Grand Rounds will be conducted during the summer at 3:00 p.m. in the Rudolph Matas Surgical Library at Tulane Medical School. They will be conducted from 9:30 - 11:00 a.m. in Delgado Amphitheater at Charity Hospital during the academic school year. Charity admitted patients during the year in controversy on the basis of the patient's medical need as well as the teaching aspect of individual cases. Patients were not turned away because they were unable to pay. Petitioner had no future contractual obligation to Charity or the State of Louisiana upon completion of his surgery residency training. Also during this residency Dr. Haygood was not required to furnish progress reports to the State of Louisiana or Tulane University. However, the Tulane faculty evaluated petitioner and submitted these evaluations to the Tulane department of surgery. Petitioner's monthly ward assignments were made by the Tulane department of surgery and not the hospital where petitioner was training. The amount paid to petitioner by Charity and the affiliated hospitals was neither determined on the basis of financial need nor was it based on petitioner's earning capacity *378 as a private practicing licensed doctor. [4] *379 For the year in issue petitioner received separate wage and tax statements (W-2's) from Baptist, Veterans and Charity Hospitals, the employers listed as Southern Baptist Hospital, the Veterans' Administration, and Charity Hospital of Louisiana at New Orleans, respectively. Amounts for Federal, social security, and state income taxes were withheld from moneys paid petitioner by all employers with the exception of Charity Hospital. Initially, petitioner received a bimonthly paycheck from Charity with amounts withheld for Federal, state and social security taxes. After passage of Act No. 581 on July 12, 1972, Louisiana Revised Statutes Section 46:922, [5] petitioner was paid bimonthly in two checks with one check designated as a stipend and no social security, Federal or state income taxes were withheld from the gross amount. The second check had withholding for Federal, State and social security taxes. [6] The gross amount of two checks from Charity equalled the gross amount paid to petitioner prior to the enactment of Act No. 581. The parties have stipulated that "Although Charity Hospital routinely allowed residents one month vacation annually, this was NOT permitted by the Tulane University Surgery Department and petitioner was NOT allowed the usual one month vacation * * *." [7] Also Charity and its *380 affiliated hospitals did not provide its residents with malpractice insurance, and accordingly petitioner purchased such insurance. Dr. Haygood had no civil service status and was not entitled to retirement or sick benefits or workmen's compensation. During 1972 the surgical faculty at Charity could have provided the same quality of surgical care, quantitative and qualitative, by working substantially longer hours had the residents, such as petitioner, not been present. Also this would be true at Baptist and Veterans Hospitals, but more so at Baptist because all patients were private patients in a private hospital. On his 1972 return petitioner excluded from gross income $1,523.06 paid as a stipend under Louisiana Legislative Act No. 581, deducted as a miscellaneous itemized deduction $2,899.85 as a "Louisiana State nontaxable training grant," and took a medical deduction for insurance premiums for medical care of $150. In his notice of deficiency dated July 23, 1975 respondent determined that the exclusion from gross income and the training *381 grant deduction were improper and also denied $59 of the medical insurance deduction. OPINION Section 117[8] *382 permits an exclusion from gross income of amounts received by an individual as a scholarship or a fellowship grant. In the case of a taxpayer who is not a candidate for a degree, section 117(b)(2)(B) limits the exclusion "* * * to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or fellowship grant during such taxable year * * *." [9] The statute itself fails to define the meaning of scholarship or fellowship grant. Section 1.117-3(c), Income Tax Regs., defines a fellowship grant as an amount "* * * paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research." Furthermore, section 1.117-4(c), [10] *383 Income Tax Regs., provides that amounts paid as compensation for services or primarily for the benefit of the grantor are not to be considered as fellowship grants for purposes of section 117. In Bingler v. Johnson,394 U.S. 741 (1969) the Supreme Court upheld the validity of this regulation, describing, at 751, the characteristics of a scholarship or a fellowship grant as follows: Here, the definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of "scholarships" and "fellowships" as relatively disinterested, "no-strings" educational grants with no requirement of any substantial quidpro quo from the recipients. Therefore, the crucial test is whether the primary purpose of amounts paid to *384 petitioner was to further his education and training or to compensate him for services rendered. Elmer L. Reese, Jr.,45 T.C. 407 (1966) affd. per curiam 373 F.2d 742 (4th Cir. 1967). Petitioner's burden is to prove that he was paid to study rather than to work. Stephen L. Zolnay,49 T.C. 389 (1968). After careful consideration of the entire record we are totally convinced that petitioner was paid to work. Petitioner argues that the payments involved herein cannot realistically be compensation for services. He was enrolled and training in a regular course of study, as a student, with the Tulane University School of Medicine and assigned to various hospitals and surgical services by the Tulane University department of surgery. Petitioner contends that he was not entitled to the usual employees' benefits: labor union and credit union membership, retirement and hospital sick benefits, workmen's compensation and civil service status. Also his vacation period was controlled by the Tulane department of surgery and not by the hospital. In this connection he submits that the director of Charity Hospital, Dr. Isadore D. Brickman, considers, in a letter introduced into the record, the resident *385 program at Charity to be primarily educational in nature and that said stipend, received by petitioner, enables him to pursue prescribed studies and training and does not represent compensation or payment for services rendered to patients or to Charity. Further, in Dr. Brickman's opinion, Charity Hospital is required by Louisiana R.S. 46:922 to consider any funds paid petitioner, to the extent of $300 per month, as a stipend for the purpose of furthering the education and training of the recipient. Moreover, petitioner in furtherance of his argument states that the resident contract he signed with Charity provided that Charity reserved the right to temporarily assign him to another hospital for the benefit of his training. Petitioner emphasizes that at no time during 1972, as a junior resident, did he have ultimate responsibility for patient care. However on the record it is clear that the payments involved herein represent compensation for services. "A disinterested 'no-strings attached' motive by the various hospitals cannot be inferred from these arrangements." Steven Michael Weinberg,64 T.C. 771, 777 (1975). Petitioner performed substantial and significant services to the hospitals. *386 It is undisputed that petitioner, as a doctor, made rounds, saw patients, took histories, proposed diagnosis, gave pre and post-operative care, and assisted in and performed surgery under the supervision of faculty members and senior residents. The payments to Dr. Haygood bore no relationship to financial need but were based on the term of service fulfilled by petitioner. Steven Michael Weinberg,supra;Rundell v. Commissioner,455 F.2d 639 (5th Cir. 1972) affg. per curiam a Memorandum Opinion of this Court; Parr v. United States,469 F.2d 1156 (5th Cir. 1972). Although petitioner was initially subject to greater supervision at the beginning of 1972, it is apparent that the more proficient he became in his duties the more perfunctory the staff guidance. This supervision and control exercised over petitioner's services is not uncharacteristic of compensation; supervision is inherent in most employer-employee relationships. A supervisor watches over the work of a subordinate not because the subordinate's work has little independent value, but to insure that the work will be well done and worthwhile. See Frederick Fisher,56 T.C. 1201, 1212 (1971). We recognize that the payments *387 were beneficial in enabling petitioner to further his education by helping defray expenses and by providing him with highly valuable training, particularly in preparing for a life long specialty in surgery. However, this is not inconsistent with our finding that the stipends represented compensation for services. As we said in Aloysius J. Proskey,51 T.C. 918, 925 (1969): Yet virtually all work as an apprentice, whether in medicine or law, carpentry or masonry, provides valuable training. Nothing in section 117 requires that an amount paid as compensation for services rendered be treated as a nontaxable fellowship grant, merely because the recipient is learning a trade, business, or profession. Whatever training petitioner received during the years of his residency--and we do not deny that it was substantial--was merely "incidental to and for the purpose of facilitating the raison d'etre of the Hospital, namely, the care of its patients." Ethel M. Bonn,34 T.C. 64, 73 (1960) * * *. Also as stated by the Fifth Circuit, to which an appeal in the case would lie, in Parr v. United States,supra at 1157: It is likewise clear that Taxpayers attended these institutions for the purpose *388 of advancing their medical knowledge, that is, to become specialists in their respective fields. These facts, however, do not shake us in our conclusion that the overwhelming case law and common sense stand between Taxpayers and the Federal Treasury. Moreover, even if the hospital could operate without residents as petitioner argues, it is doubtful it could do so as efficiently as it could with their assistance. As we stated in Frederick Fisher,supra at 1215: More fundamentally, even if the Center could do without residents, it did not do without them; it used their services, and it paid for them. Many employees may be dispensable in the sense that their employers could "operate" without them. But such dispensability hardly renders their salaries noncompensatory. Petitioner has cited for our consideration Leathers v. United States,471 F.2d 856 (8th Cir. 1972), cert. den. 412 U.S. 932 (1973). In that case the Circuit Court characterized the evidence as conflicting and refused to reverse the jury verdicts on the ground that they were not clearly erroneous. Hence we find petitioner's reliance thereon to be misplaced. Furthermore, Dr. Brickman's opinion expressed in his letter *389 submitted by Dr. Haygood is inconsistent with the respective hospitals' treatment accorded petitioner prior to the enactment of Louisiana R.S. 46:922. All such hospitals where petitioner served his residency withheld amounts for Federal, state and social security taxes. Only after R.S. 46:922 was passed did Charity divide petitioner's pay into two checks. By enacting this statute, the State of Louisiana attempted, apparently, to amend its own income tax law. For the year in issue, Louisiana's income tax law was patterned directly after Federal income tax law. [11] Many sections were adopted verbatim including section 117, I.R.C. 1954. See Louisiana R.S. 47:49. As amendments to the Federal income tax law were adopted, corresponding or modifying amendments in the Louisiana law were made in some instances but not in others. R.S. 46:922 appears to be an amendment to the statutory framework and application of section 117, I.R.C. 1954 although it is not found under Title 47 of Revenue and Taxation law of the State of Louisiana but under Title 46 Public Welfare and Assistance Law. However the law is well settled that "since the Federal revenue laws are designed for a national scheme *390 of taxation, their provisions are not to be deemed subject to state law 'unless the language or necessary implication of the section involved' so requires." Helvering v. Stuart,317 U.S. 154, 161 (1942), citing United States v. Pelzer,312 U.S. 399, 402-3 (1941). In the instant case the crucial issue is whether petitioner was paid to work or study. The resolution of this issue is not subject to state control or limitation unless section 117, expressly or by implication, makes its application dependent on state law. We find no such implication or statutory mandate. Our determination based, necessarily, from all the facts and circumstances of the particular case is that petitioner was paid for services rendered. Moreover, we note the opinion of the Attorney General of the State of Louisiana, No. 75-948, December 31, 1975, concerning taxability of stipends paid, prior to December 31, 1974, to hospital interns and residents: * * *
In response to the question of whether or not the stipend is subject to taxation prior to December 31, 1974, it is our opinion that the stipend is taxable for the following reasons: 1) The stipend granted by R.S. 46: 922 does not specifically provide a tax *391 exemption for the $300.00 per month. 2) The stipend is paid to the interns in residence while rendering services at the hospital. Due to the fact that the statute does not specifically provide for tax exempt status and the stipend appears to be paid for services rendered, it is our opinion that the stipend does not fall within R.S. 47:49 which provides an exclusion from gross income for certain scholarships and fellowship grants. It should be noted that the language of R.S. 46:922 is insufficient to show the intent of the legislature as to whether or not it intended to exclude the stipend from gross income. Inasmuch as petitioner has presented no evidence concerning his medical insurance premiums paid in 1972 only that amount allowed by respondent will be sustained. Rule 142(a), Tax Court Rules of Practice and Procedure.
Decision will be entered for the Respondent. Footnotes
1. In 1972 petitioners resided at 6109 Rosalie Court, Metairie, Louisiana. The record does not indicate with which Internal Revenue Service Center petitioners filed said joint return.↩
2. The resident program at Tulane (including Charity) is recognized by the U.S.Veterans' Administration as a program wherein a qualified recipient may receive G.I. Educational Assistance. ↩
3. Upon completion of his residency in general surgery in June 1973, petitioner received a certificate from the Tulane division of graduate and postgraduate medical studies. Also, Dr. Haygood met all requirements of the American Board of Surgery and was appointed a Diplomat (Board certified) of the American Board of Surgery in 1975.↩
4. Petitioner was not permitted to engage in any medical practice or other business activity other than pursuing the residency program in which he was enrolled. 5. Section 1. Section 922 of Title 46 of the Louisiana Revised Statute of 1950 is hereby enacted to read as follows: Sec. 922. Stipends received by interns and residents Any funds paid to any graduate of a recognized medical school or college who is serving as an intern or resident of any charity hospital of this state shall be deemed to be stipends granted for the purpose of furthering the education and training of the recipient; provided, however, that no funds in excess of three hundred dollars per month multiplied by the number of months in a taxable year shall be deemed to be a stipend. Section 2. All laws or parts of laws in conflict herewith are hereby repealed. ↩
6. Petitioners' W-2 from Charity showed wages paid subject to withholding of $4,130.44. Other compensation paid was $1,523.06 such amount labelled "non-taxable stipend per Louisiana Leg. Act 581."↩
7. However petitioner testified that "Surgery residents were not allowed the full month"; we infer from this that some vacation time was permitted.↩
8. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS (a) General Rule.--In the case of an individual, gross income does not include-- (1) any amount received-- (A) as a scholarship at an educational institution (as defined in section 151(e)(4)) (B) as a fellowship grant, * * *↩
9. However, a precondition to the applicability of the limitation is a finding that the amounts received by petitioner, were in first instance, a scholarship or fellowship grant. Elmer L. Reese, Jr.,45 T.C. 407 (1966) affd. per curiam 373 F.2d 742↩ (4th Cir. 1967). 10. Section 1.117-4(c) Income Tax Regs.
(c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a), of sec. 1.117-2, any amount paid or allowed to, or on behalf of an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant.
11. However for taxable years after 12/31/74, individuals compute their Louisiana tax liability by use of tax tables based on Federal income tax liability.↩