ROBERT C. and PROSLYN P. BATSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Batson v. Commissioner
Docket No. 2484-76.
United States Tax Court
T.C. Memo 1977-339; 1977 Tax Ct. Memo LEXIS 106; 36 T.C.M. (CCH) 1359; T.C.M. (RIA) 770339; September 27, 1977, Filed Theodore L. Jones,David Irvin Couvillion and Gregory A. Pletsch, for the petitioners. Joseph R. Goeke, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: Respondent determined deficiencies in petitioners' Federal income tax returns for the taxable years 1972 and 1973 in the amounts of $751.45 and $225.00, respectively. *107 The issues remaining for decision are as follows: (1) Whether $300.00 per month of the amount paid petitioner by the State of Louisiana, through Charity Hospital in 1972 and Earl K. Long Hospital in 1973 as a resident in the Louisiana State University School of Medicine residency program, is excludable from petitioner's gross income as a scholarship or fellowship grant under the provisions of section 117. [1]
(2) Whether the $1,500.00 received by petitioner from Louisiana State University as a research associate in the research laboratory of the Department of Surgery of Louisiana State University School of Medicine is excludable from petitioner's gross income as a scholarship or fellowship grant under the provisions of section 117. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time of the filing of the petition herein, petitioners resided in Metaririe, Louisiana. Petitioners filed joint Federal income tax returns for the taxable years 1972 and *108 1973 with the Internal Revenue Service in Austin, Texas. Proslyn P. Batson is a party to this action only because she joined in the filing of this return, and accordingly, Robert C. Batson hereinafter shall be referred to as petitioner. Petitioner graduated from Louisiana State University School of Medicine, hereinafter referred to as L.S.U.S.M. and became licensed to practice medicine in Louisiana in June 1971. During the years in issue, petitioner was not a candidate for a degree. Petitioner began a residency in General Surgery under the auspices of L.S.U.S.M. on July 1, 1971. In providing a training program for surgical residents, the University utilized several hospitals, including Charity Hospital of Louisiana in New Orleans, hereinafter referred to as Charity, and Earl K. Long Memorial Hospital in Baton Rouge, hereinafter referred to as Earl K. Long. During 1972, petitioner was assigned to Charity during the months of March and April and July through December. From July through December petitioner was also assigned as a research associate in the laboratory of the Department of Surgery of L.S.U.S.M. in New Orleans. During the year 1973, petitioner was assigned as a *109 resident to Earl K. Long from April 1 through June 30. While assigned to Charity during March and April of 1972 and while at Earl K. Long in 1973, petitioner had certain patients assigned to his care and treated patients at both hospitals as an incident of his surgical residency. Petitioner also acted as a surgical consultant to the emergency room while at Charity and Earl K. Long. In that capacity, he was asked to see and evaluate patients with suspected surgical problems. As a further part of his residency, petitioner participated in the evaluation of patients with various types of surgical disorders, ordered appropriate diagnostic studies at the time the of the patients' admission to the hospital, performed surgical procedures under the supervision of the attending university staff and monitored the recovery of patients in the Out Patient Clinic until the patients were finally discharged. A great portion of the responsibility associated with the regular care and treatment of patients at Charity and Earl K. Long was performed by residents and interns. Without their services, the hospitals would have been forced to pay other doctors or call upon volunteer doctors to perform *110 the services performed by the residents and interns. Over 90 percent of all surgical procedures at both hospitals are conducted by surgical residents. During his residency in 1973 at Earl K. Long, petitioner participated in 135 major operations and 49 minor operations. During his entire period of residency, petitioner participated in 677 major operations. During the period of his residency at both hospitals, petitioner averaged night duty approximately every third night. When he was not on duty at Charity and Earl K. Long he was on call. While a first-year surgical resident, petitioner received a two-week paid vacation provided by Charity. While at Earl K. Long, petitioner received free meals and a free parking space. From July 1, 1972 to December 31, 1972, petitioner was appointed as a research associate at L.S.U.S.M. Department of Surgery research laboratory. During this period, petitioner was also assigned to Charity Hospital. However, his patient responsibilities were reduced substantially. The research associate program provided a stimulus for increased research activity in the research programs of all the affiliated institutions and as an incidental benefit contributed *111 to a higher quality of medical training in the Department of Surgery of L.S.U.S.M. Petitioner's activities in the research laboratory were of an independent nature. The research techniques and the experimentation were independently developed by petitioner. He was not required to sumbit any reports to L.S.U.S.M. Department of Surgery concerning his experiments or publish his results. Petitioner did participate in research conferences with other members of the medical school faculty, the purpose of which was to permit faculty members to lend advice to the research. During the months that petitioner served Charity Hospital prior to the enactment of La.Rev.Stat. § 46:922 (1972), [2] he received a bimonthly paycheck from Charity with amounts withheld for Federal, state and social security taxes. After passage of the act, he received two bimonthly checks from Charity, with one check in the amount of $150.00 designated as a stipend with no social security, Federal or state income taxes nor retirement contributions withheld. The second check had withholding for Federal, state and social security taxes. The gross amount of these two bimonthly *112 checks from Charity equaled the gross amount paid to petitioner bimonthly by Charity prior to the enactment of Act. No. 581 as a research associate. Petitioner received $300.00 per month from Louisiana State University for acting as a research associate. This amount was paid from State Acct. No. 450-80. State Acct. No. 450-80 is state appropriated tax funds for instruction and administration in the Department of Surgery. This $300.00 per month was extra compensation for the additional activity involved in the lab assignment and was in addition to what he received from Charity. On their 1972 and 1973 joint Federal income tax returns, petitioners excluded $3,000.00 and $900.00, respectively, *113 from their gross income as a scholarship or fellowship grant. Respondent determined payments by Charity, L.S.U.S.M. and Earl K. Long were compensation to petitioner for services performed and, therefore, are not deductible under the provisions of section 117. OPINION Petitioner, not a candidate for a degree, served as a surgical resident in the L.S.U.S.M. Department of Surgery residency program during the calendar years 1972 and 1973. In providing a residency program, the University utilized several hospitals including Charity Hospital in New Orleans and Earl K. Long Memorial Hospital in Baton Rouge. During July through December 1972, in addition to being assigned to Charity, petitioner was assigned as a research associate in the surgical research laboratory of L.S.U.S.M. Petitioner was paid $5,025.51 by Charity in 1972 and $2,380.00 by Earl K. Long in 1973. In addition, petitioner received $1,500.00 in 1972 from Louisiana State University as a research associate. On their 1972 and 1973 joint Federal income tax returns, petitioners excluded $3,000.00 and $900.00, respectively, from their gross income as a scholarship or fellowship grant. Respondent determined these *114 amounts represented compensation for services and therefore are not excludable from petitioner's gross income. Section 117 provides, in the case of an individual, that gross income does not include any amount paid as a scholarship or fellowship grant. This exclusion under section 117(a)(1) is limited by section 117(b)(2) to $300.00 per month for any individual receiving a scholarship or fellowship who is not a candidate for a degree. Section 1.117-3, Income Tax Regs., defines the term "fellowship grant" as "an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research." Whether a particular amount satisfies this general definition depends upon the nature of the activities carried on by the recipient. Section 1.117-4(c)(2), Income Tax Regs., provides that a payment will be considered to be a fellowship grant for the purpose of section 117, if "the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity." If, however, a payment represents compensation for employment services or for services which are subject to the supervision of the grantor, it is not excludable *115 as a fellowship grant. Anderson v. Commissioner,54 T.C. 1547 (1970). The regulation was challenged and upheld in Bingler v. Johnson,394 U.S. 741 (1969). The Supreme Court noted the regulations are consistent "with the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no strings' educational grants, with no requirement of any substantial quidproquo from the recipients." The applicability of section 117 to payments received by resident physicians in factual situations similar to petitioner's has received consideration by the courts on a number of occasions. The courts considering this question have consistently held such payments to be "compensation for past, present, or future employment services" or "payment for services which are subject to the direction or suspension of the grantor" and consequently not excludable from the recipient's gross income. See Parr v. United States,469 F.2d 1156 (5th Cir. 1972); Weinberg v. Commissioner,64 T.C. 771 (1975); Rosenthal v. Commissioner,63 T.C. 454 (1975); Dietz v. Commissioner,62 T.C. 578 (1974). *116 This Court has decided several cases involving residents at Charity Hospital, in particular. Haygood v. Commissioner,36 T.C.M. 321 (1977); Zehnder v. Commissioner,32 T.C.M. 1189 (1973); and Bergeron v. Commissioner,31 T.C.M. 1226 (1972). Haygood involved a taxpayer whose duties were similar to those of petitioner. The Court stated in Haygood v. Commissioner,supra at 325: * * * on the record, it is clear that the payments involved herein represent compensation for services. * * * Petitioner performed substantial and significant services to the hospitals. It is undisputed that petitioner, as a doctor, made rounds, saw patients, took histories, proposed diagnosis, gave pre and post-operative care, and assisted in and performed surgery under the supervision of faculty members and senior residents. * * * Petitioner testified that his services at Earl K. Long involved similar activities as those performed at Charity. Accordingly, the Court's statement readily applies to the petitioner's residency at Charity and Earl K. Long. The testimony in this case and the findings in Zehnder v. Commissioner, supra at 1192, *117 point out that a great portion of the care and treatment of patients at Charity is performed by residents and interns. Petitioner rendered extensive and valuable services to Charity and Earl K. Long, the effect of which was clearly to provide the "substantial quidproquo" which the Supreme Court described in Bingler v. Johnson,supra. Petitioner performed or assisted in numerous operations. Over 90 percent of all surgical procedures at both hospitals were performed by surgical residents. Furthermore, petitioner spent many hours each week caring for patients or on call. If residents had not been available at Charity and Earl K. Long the hospital would have been forced to pay other doctors or call upon volunteer doctors to perform the services performed by the residents. In addition to the nature and extent of the services rendered, two other factors support the conclusion that the payments represented compensation. First, payments were not based on the petitioner's financial need. Dietz v. Commissioner,supra. Second, petitioner received paid vacation and other fringe benefits indicative of an employment relationship. *118 Anderson v. Commissioner,supra.
Accordingly, on the basis of the evidence in the record, the Court finds the payments from Charity and Earl K. Long constituted compensation for present services and as such are not excludable from gross income under section 117. During the period when petitioner was assigned as a research associate he was also assigned as a resident at Charity. Petitioner's assignments at Charity were reduced during the period he was doing research. Charity made no distinction between the petitioner's status and that of other residents at Charity. Charity did not earmark funds to any residents for the purpose of doing research at outside institutions, but paid petitioner solely because he was a resident at Charity Hospital. Accordingly, the payments to petitioner by Charity during the period he was performing research were of the same nature as the payments while he was on full assignment to Charity in March and April 1972. La. Rev.Stat. § 46.922 (1972), provides that funds granted for the purpose of furthering the education and training of the recipients paid to interns and residents serving at hospitals in the State of *119 Louisiana should be deemed "stipends" up to $300.00 per month. This statute does not affect the Federal income tax treatment of the amounts paid petitioner by Charity and Earl K. Long. This Court recently ruled in Haygood v. Commissioner, supra, that section 117 was not subject to state control or limitation and this state statute had no bearing upon the classification for Federal tax purposes. State law cannot ascribe a characterization of income which is binding for purposes of determining what is or is not taxable under the Internal Revenue Code. Wolder v. Commissioner,58 T.C. 974 (1972), revd. on other grounds, 493 F.2d 608 (2nd Cir. 1974), cert. denied, 419 U.S. 828 (1974). Furthermore, if petitioner relies on the statute as an indication of the intent of the grantor in making these payments to the residents, the activities carried on by petitioner and the dependency of the hospitals in question upon the services performed by petitioner negate this argument. Anderson v. Commissioner,supra; Zolnay v. Commissioner,49 T.C. 389 (1968). Finally, Haygood v. Commissioner,supra, *120 is directly on point on this issue and precludes any determination to the contrary concerning payments made to the petitioner during his services as a resident at Charity and Earl K. Long. Whether the $1,500.00 received by petitioner from Louisiana State University as a research associate in the laboratory of the L.S.U.S.M. Department of Surgery is excludable from petitioner's gross income depends on the primary purpose for which the payments are made. Rosenthal v. Commissioner,supra. This purpose must be determined from all the surrounding facts. From the facts in the record the Court concludes that the primary purpose of the payments made to petitioner was to enable him to further his own individual education and training. The record indicates the activities of petitioner in the laboratory were of an independent nature. Petitioner was able to choose the subject of his research, subject to the approval of the department and independently develop the research techniques and experiments. Petitioner was not required to submit status reports or publish the results of his project. Petitioner was not researching a project which L.S.U.S.M. had contracted *121 to research, but rather he chose his project based on his individual interest. This fact distinguishes this case from Kao v. Commissioner,T.C. Memo. 1977-288, in which the primary purpose of petitioner's salary was to enable Pennsylvania State University to obtain petitioner's assistance in meeting its research commitment to the National Institute of Health. In the Court's view the payments were a fellowship grant within the meaning of the regulations. Accordingly, the petitioner is entitled to an exclusion of $1,500.00 in 1972. Decision will be entered under Rule 155. Footnotes
1. Unless as otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.↩
2. Sec. 922. Stipends received by interns and residents Any funds paid to any graduate of a recognized medical school or college who is serving as an intern or resident at any charity hospital of this state shall be deemed to be stipends granted for the purpose of furthering the education and training of the recipient; provided, however, that no funds in excess of three hundred dollars per month multiplied by the number of months in a taxable year shall be deemed to be a stipend.↩